UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUNDRY, DRY CLEANING WORKERS AND ALLIED INDUSTRIES HEALTH FUND, UNITE HERE! and LAUNDRY, DRY CLEANING WORKERS AND ALLIED INDUSTRIES RETIREMENT FUND, UNITE HERE!<br><br>                                        Petitioners,<br><br>                -against-<br><br>OLD MASTERS CLEANERS, INC.,<br><br>                                        Respondent. | 08-CV-360 (PKC)<br><br>**DECLARATION OF DAVID C. SAPP IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD** |

**DAVID C. SAPP**, in lieu of an affidavit, as permitted by 28 U.S.C. § 1746 and Local Civil Rule 1.10 of the United States District Court for the Southern District of New York, declares as follows:

1.      I am the attorney for the Laundry, Dry Cleaning Workers and Allied Industries Health Fund, UNITE HERE! and Laundry, Dry Cleaning Workers and Allied Industries Retirement Fund, UNITE HERE! (hereinafter, "petitioners"), and am duly admitted to practice before this Honorable Court and am fully familiar with the facts and prior proceedings had herein.

2.      On March 14, 2008, the Court issued its Order directing petitioners to supplement the record before the Court by submitting a copy of the collective bargaining agreement underlying the September 28, 2007 Arbitration Award (the "Award") at issue in this proceeding, the record before the arbitrator not previously submitted, and an affidavit establishing personal jurisdiction over respondent Old Masters Cleaners, Inc..

3.      I submit this Declaration in support of the petition to confirm arbitration award and in compliance with the Court's March 14, 2008 Order.

4.      Upon information and belief, respondent and Laundry, Dry Cleaning Workers and Allied Industries Joint Board, UNITE HERE! ("the Union") have been

parties to a series of collective bargaining agreements and supplemental agreements covering all relevant periods covered by the Award. Pursuant to said collective bargaining agreements and supplemental agreements, contributions to petitioner Funds were and are due to be paid monthly by respondent.    The collective bargaining agreements set forth the contribution rates to be used in calculating the amounts due to petitioner Funds. Copies of the collective bargaining agreements in force for all relevant time periods are annexed hereto as Exhibit A.

5.    The record before the arbitrator at the September 28, 2007 arbitration hearing consisted of the following:

(A)    The collective bargaining agreement (See Exhibit A annexed hereto);

(B)    A summary of the delinquent contributions sought in the arbitration (A copy of the summary is annexed hereto as Exhibit B);

(C)    The notice of intention to arbitrate (A copy of the notice is annexed hereto as Exhibit C); and

(D)    A subpoena duly served on the respondent (A copy of the subpoena is annexed hereto as Exhibit D).

6.    Respondent was served with the petition to confirm arbitration award, notice of petition to confirm arbitration award, and a memorandum of law in support of the petition on February 6, 2008 by mailing copies of such documents to respondent's last known business address at 266 West 72nd Street, New York, New York 10023, which is located in the Southern District of New York. (A copy of the Affidavit of Service by Mail is annexed hereto as Exhibit E.)  For the following reasons, service by mail is an acceptable method of service.

7.    Petitioners served the respondent in the manner set forth in the collective bargaining agreement.    More specifically, Article 35(c) of the respondent's CBA provides:

> The parties consent that any papers, notices or process including subpoenas necessary or appropriate to initiate or

2

> <u>continue an arbitration hereunder or to enforce or confirm</u>
> <u>an award may be served by ordinary mail directed to the</u>
> <u>last known address of the interested parties</u> or their
> attorneys. The service of any other notices that may be
> required under the Civil Practice Law and Rules is hereby
> expressly waived.

(Emphasis added).

8.     Case law supports the proposition that service of process by mail is sufficient if the party has agreed and such service is by contract.   See <u>Heart & Entertainment v. Multichannel Distributors</u>, 1997 WL 72150 (S.D.N.Y. 1997); <u>Lawn v. Franklin</u> 328 F. Supp. 791, 794 (S.D.N.Y. 1971), where the court allowed service of process by mail to confirm an arbitration award.   Accordingly, as permitted by the collective bargaining agreement, service by mail on respondent is valid service, and this Court has personal jurisdiction over the respondent.

9.     The federal Arbitration Act, 9 U.S.C. § 12, provides that service of the notice of petiton to confirm an arbitration award may be made by mail if the recipient of the notice resides in the district where the proceeding is brought.

9 U.S.C . § 12 states in pertinent part:

> If the adverse party is a resident of the
> district within which the award was made,
> such service shall be made upon the adverse
> party or his attorney as prescribed by law for
> service of notice of motion in an action in the
> same court.

Service of a notice of motion may be made by mail.  Based on the foregoing, this Court has personal jurisdiction over the respondent.

**WHEREFORE**, the undersigned respectfully requests that the Court issue an Order and Judgment confirming the September 28, 2007 Arbitration Award against respondent and awarding the amounts sought in the Petition to Confirm Arbitration Award.

I declare under the penalty of perjury that the foregoing is true and correct. Executed at New York, New York on March 28, 2008.

By: _____
David C. Sapp (DS5781)
Counsel for Petitioners
730 Broadway – 9th Floor
New York, New York 10003
(212) 539-5576

**EXHIBIT A**

# COLLECTIVE BARGAINING AGREEMENT

---

**and**

## Laundry, Dry Cleaning & Allied Workers Joint Board, UNITE, AFL-CIO, CLC

# UNITE HERE

November 28, 2003

## <u>AGREEMENT</u>



## A Message From The Joint Board, Executive Board

### One Union!  One Contract!

This contract defines the basic benefits achieved through negotiations with the Laundry Industry in 2003. We publish it so that you the members may know the terms and conditions of the contract and the benefits which it provides.

We are proud to say that this agreement provides among the best benefits enjoyed by employees of the Laundry and Linen Supply Industry anywhere in the country. It is certainly not all that we would like it to be, but considering the great difficulties which the union and the industry have faced in the last few years, including non-union  competition, we can state that this agreement is a real achievement.

We have improved the Health & Welfare program and the Retirement benefits. We will continue to improve the way our union fights for and represents the membership. We will continue to improve the quality of the service that the Health & welfare Department provides to each member.

The difficulties we must contend with to protect and defend  the jobs, working conditions and benefits of our members probably will continue. That is why we need to build a strong and democratic union, in order to effectively confront the non union laundries that undermine our standards. With a strong union, with a strong shop steward system, with a cadre of union activists, we will be in a strong position to organize those laundries that attempt to undermine our wages and benefits. We urge all of you to get involved with your union.

If you should have any questions about the contract or any other issue; please contact your union Representative.

| Index | Page |
|---|---|
| Arbitration | 38 |
| Bereavement | 25 |
| Bulletin Board | 26 |
| Commission Rates | 11 |
| Discharges | 36 |
| Dues | 6 |
| Engineers & Maintenance | 27 |
| Good Health Day | 25 |
| Grievance Procedure | 36 |
| Guarantees | 11 |
| Holidays | 22 |
| Hours of Employment | 14 |
| Layoff | 40 |
| Leave of Absence | 18 |
| Lunch Period | 16 |
| Make-up time | 24 |
| Mergers, Consolidation, Sale or Closing | 41 |
| Methods of payment | 12/23 |
| Military Service | 33 |
| Minimum Rates | 11 |
| Moving | 33 |
| Office Employees | 15 |
| Other Agreements | 45 |
| Organizing for Special Leave | 28 |
| Posting of Schedule | 16 |
| Recognition | 4 |
| Rest Period | 18 |
| Route Employees | 14 |
| Rules & Regulations | 27 |
| Sanitary Conditions | 34 |
| Sexual Harassment | 39 |
| Shifts | 16 |
| Sick leave (pay) | 18 |
| Strikes, Stoppages & Lockouts | 40 |
| Termination of Agreement | 46 |
| Time Cards | 16 |
| Transfer | 27 |
| Trial Periods | 5 |
| Union Shop | 4 |
| Unit | 4 |
| Vacations | 20/21 |
| Wages | 7/12 |

AGREEMENT made as of November 28, 2003 between _____, hereinafter referred to as the "Employer") and the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE, AFL-CIO, CLC., (hereinafter referred to as the "Union".)

In consideration of the mutual promises hereinafter set forth, the parties agree as follows:

1.   **UNIT:**

A.      The term "employee" or "worker" when used in this Agreement, includes all of the employees of the "Employer" except guards and supervisors as defined in the National Labor Relations Act.

B.      No one in the foregoing excluded categories shall engage in productive work except insofar as emergencies arise because of the unavailability of employees.

2.   **RECOGNITION:**

A.      The Employer recognizes the Union as the exclusive bargaining representative of the employees.

B.      The Employer shall recognize and deal with such representatives as the Manager of the Union may designate and shall permit such designated representatives to visit the plant at any time during working hours provided that there shall be no interference with production.

C.      The Employer agrees to make available to the Union such payroll and production records as the Union may reasonably require as the collective bargaining agent.

3.   **NON-DISCRIMINATION:**

The employer shall not discriminate against or among employees or applicants for employment on the basis of the employees' or applicants' race, color, national origin, ethnic heritage, citizenship, religious creed or lack thereof, political beliefs or affiliations, gender, sexual orientation or preference, charge of sex, marital status or age (as provided by law). The Employer shall not discriminate against any worker by reason of his or her membership in or activity on behalf of the Union.

4.   **UNION SECURITY:**

A.      To the extent permitted by law, membership in the Union on and after the 30th day following the beginning of employment of each employee or following the execution date of this Agreement, whichever is the later, shall be required as a condition of employment.

B.      To the extent permitted by law, all employees who are now members or hereafter become members of the Union must remain members during the term of this Agreement as a condition of employment.

Page # 4

C.      When the Employer requires employees, the Employer shall notify the Union of the number of employees and classification required. When the Union is requested to furnish employees, the Union agrees to supply the Employer with the most competent persons available, within two working days after the date of request. The Union warrants that referrals for employment shall be made available to both members and non-members of the Union, and that in making referrals to the Employer, it shall not discriminate against any applicant for employment.

The Employer shall not discriminate against employees in regard to hire or tenure of employment by reason of Union membership.

D.      The Employer shall notify the Union of the new employees hired within one week of their hire.

The Employer shall send to the Union all names of all employees who have left their employment during any week. Such notification shall be sent within (48) hours after the end of the week of such termination.

E.      The Employer shall require each new employee to fill out all enrollment forms necessary for the various insurance benefits mandated under this Agreement and the Supplemental Agreements appended thereto, and shall send said forms to the Amalgamated Service and Allied Industries Insurance Fund (the "Fund") within one (1) week of the date of hire of each new employee.

5.   **NEW EMPLOYEES AND TRIAL PERIODS:**

A.      New employees may be employed for the following trial periods:
Experienced Inside Production and Office Employees            2 weeks
Inexperienced Inside Production and Office
Employees                                                     4 weeks
Experienced Route Employees, **including Helpers**   3 weeks
Inexperienced Route Employees , **including Helpers**  3 months

Helpers and Special Delivery Employees
promoted to Route Employees                         1 month

The parties may by mutual written agreement extend the trial period.

B.      The Employer may require the employee to be bonded, at the Employer's cost.

C.      The Employer may require the employee to submit to a physical examination upon hiring at the Employer's cost.

Page # 5

6.  **UNION DUES:**

Upon submission by the Union to the Employer of an authorization card signed by the employee, the Employer shall deduct union dues and initiation fees of each employee as follows:

The Employer shall deduct initiation fees of each new employee in four (4) equal installments beginning with the first pay day following the submission of the written authorization and weekly thereafter. The Employer shall commence to deduct union dues from each employee the first payday following the submission of the written authorization. Thereafter, the Employer shall, not later than the first payday of each month, deduct union dues from the wages of each employee. All union dues and initiation fees deducted as aforesaid shall be transmitted by check to the Union not later than the 10th day of each month.

The Employer shall deduct and transmit to the treasurer of the UNITE- Political Action Committee the amount specified for each month worked from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by the UNITE-Political Action Committee. These transmittals shall occur not later than the 10th day of each month and shall be accompanied by a list of the names of those employees for whom such deductions have been made and the amount deducted for each such employee.

In the event that the Employer fails or refuses to make such remittance in the full amount within one week from the date due, the Union, anything contained in this Agreement to the contrary notwithstanding, may take whatever action it deems appropriate under the circumstances to enforce such payment. Sums deducted by the Employer as union dues, initiation fees and UNITE-Political Action Committee contributions shall be kept separate and apart from the general funds of the Employer and shall be deemed trust funds.

7.  **WAGES, MINIMUM RATES, BASE RATES, AND GUARANTEES:**

The Employer shall pay the wages, minimum rates, base rates, and guarantees, as follows:

**A.    WAGES.**

Each employee (other than route employees) on the payroll on the below listed dates, who have been continuously employed by the Employer for at least three-hundred sixty-four (364) days prior to such applicable date , shall receive the hourly wage increases listed below:

---

**I.    INCREASES:**

| | | PER HOUR | | |
|---|---|---|---|---|
| | | **11/28/03** | **1/01/05** | **1/01/06** |
| (a) | Inside Production | $.30 | $.20 | $.30 |
| (b) | Washroom Employees | $.35 | $.25 | $.35 |
| (c) | Engineers | $.45 | $.35 | $.45 |
| (d) | Machinists, Electricians, Carpenters, Auto Mechanics Auto Sprayers/Painters, Plant Mechanics, firepersons | $.40 | $.30 | $.40 |
| (e) | Oilers, Auto Mechanics' Helpers, Plant Mechanics' Helpers | $.40 | $.30 | $.40 |
| (f) | Truck & Car Washers | $.40 | $.30 | $.40 |
| (g) | Porters, Elevator Operators, etc., | $.30 | $.20 | $.30 |
| (h) | Retail Outlet Employees | $.30 | $.20 | $.30 |

| | | PER WEEK | | |
|---|---|---|---|---|
| | | **11/28/03** | **1/01/05** | **1/01/06** |
| (i) | Office Employees | $12 | $8 | $12 |

(j)    Non-Commission Route Employees

Each non-commission route employee (including trailer route drivers and delivery helpers) on the payroll on the below listed dates, who shall be receiving at least the established minimum for his/her classification on such applicable ate, shall receive the weekly wage increase listed below:

| | | PER WEEK | | |
|---|---|---|---|---|
| | | **11/28/03** | **1/01/05** | **1/01/06** |
| (I) | Family & Wholesale Divisions (N.O.G.s) | $20.00 | $12.00 | $20.00 |
| (ii) | Linen Supply, Flatwork, Office Towel, Industrial, Diaper Service, Utility other than Trailer Route Drivers | $20.00 | $12.00 | $20.00 |

The foregoing wage increases shall not be added to any of the established minimum or hiring rates for any of the job classifications in the Agreement, but the "Hiring rates" and "Job rates" for all employees other than Office Employees and non-commission route employees (including trailer route drivers and delivery helpers) shall be increased by $.25 per hour on 11/28/05.

Each employee (except non-commission route employees) on the payroll on November 28, 2004, who has been continuously employed by the Employer for at least one hundred eighty (180) days prior to November 28, 2004, shall receive a one time signing bonus of three hundred ($300) dollars.  Each Route employee (including trailer route drivers and delivery helpers) on the payroll on November 28, 2004 who has been continuously employed by the Employer for at least one hundred eighty (180) days prior to November 28, 2004, shall receive a one time signing bonus of five hundred ($500) dollars.  Any employee on the payroll on November 28, 2004, but not then continuously employed for one hundred eighty (180) days, shall receive such bonus as, if and when, such employee attains one-hundred eighty (180) days of continuous employment.

B.        MINIMUM RATES and GUARANTEES:

1.  Occupational Minimum Rates - all divisions.  The following hiring rates and occupational minimum rates shall be effective as indicated.  Any job classification not listed herein shall be paid not less than the lowest hourly rates provided herein.

(a)    All Inside Production employees except as otherwise hereafter indicated, including but not limited to marker, sorter, weigher, wet assembler, shaker, feeder, receiver, stacker, folder, finisher handironer, finish and touchup, finisher and folder, breaker, clip attacher, bundler, rough dry assorter (wholesale), utility, mender, flatwork tumbler, press operator (except linen), stacker, final assembly, linen soil department, floor help, tier-up, checker, packer, handkerchief, sock operator, examiner, inspector, diaper, diaper wrapper, curtain, blankets, etc, and retail outlet employees.

|  | 11/28/03 Per Hr | 1/01/05 Per Hr | 11/28/05 Per Hr |
|---|---|---|---|
| Hiring rate | $6.50 | $6.50 | $6.75 |
| Job Rate | $7.50 | $7.50 | $7.75 |
| (ii) Rough Dry Assorter | | | |
| Hiring rate | $6.52 | $6.52 | $6.77 |
| Job Rate | $7.52 | $7.52 | $7.77 |

| (iii) Washer, All Divisions | 11/28/03 | 1/01/05 | 11/28/05 |
|---|---|---|---|
| Hiring rate | $7.50 | $7.50 | $7.75 |
| Job Rate | $8.50 | $8.50 | $8.75 |
| (iv) Washroom Employees, other than washers-all divisions | | | |
| Hiring rate | $7.25 | $7.25 | $7.50 |
| Job Rate | $8.25 | $8.25 | $8.50 |
|  | 11/28/03 Per Hr | 1/01/05 Per Hr | 11/28/05 Per Hr |
| (v) Engineers | | | |
| Hiring rate | $13.87 | $13.87 | $14.12 |
| Job Rate | $14.87 | $14.87 | $15.12 |
| (vi) Machinists, Electricians | | | |
| Hiring rate | $11.86 | $11.86 | $12.11 |
| Job Rate | $12.86 | $12.86 | $13.11 |
| (vii) Carpenter, Auto Mechanic, Auto Body and Fender Mechanic, Auto Sprayer and Painter, Plant Mechanic | | | |
| Hiring rate | $11.74 | $11.74 | $11.99 |
| Job Rate | $12.74 | $12.74 | $12.99 |
| (viii) Fireperson | | | |
| Hiring rate | $11.50 | $11.50 | $11.75 |
| Job Rate | $12.50 | $12.50 | $12.75 |
| (ix) Oiler | | | |
| Hiring rate | $10.84 | $10.84 | $11.09 |
| Job Rate | $11.84 | $11.84 | $12.09 |
| (x) Auto Mechanics' Helper, Plant Mechanics' Helper | | | |
| Hiring rate | $10.75 | $10.75 | $11.00 |
| Job Rate | $11.75 | $11.75 | $12.00 |
| (xi) Truck and Car Washer | | | |
| Hiring rate | $10.43 | $10.43 | $10.68 |
| Job Rate | $11.43 | $11.43 | $11.68 |
| (xii) Porter, Elevator Operator, Watchman | | | |

|  | | | |
|---|---|---|---|
| Hiring rate | $6.68 | $6.68 | $6.93 |
| Job Rate | $7.68 | $7.68 | $7.93 |

(xiii) Office Employees

| | | | |
|---|---|---|---|
| Hiring Rate (Per Week) | $267.87 | $267.87 | $267.87 |
| Job Rate (Per Week) | $305.38 | $305.58 | $305.38 |

(xiv) Outside Non-Commission Employees:
Occupational Rates:

i. Family and Wholesale Divisions: (weekly)

| | 11/28/03 | 1/01/05 | 11/28/05 |
|---|---|---|---|
| a. Route Employees | $500.00 | $500.00 | $500.00 |
| b. Special Delivery | $500.00 | $500.00 | $500.00 |
| c. Shirt | $500.00 | $500.00 | $500.00 |
| d. Route Employees' Helper | $350.00 | $350.00 | $350.00 |

ii. Linen Supply, Flatwork.
Divisions:

| | | | |
|---|---|---|---|
| a. Route Employee | $560.00 | $560.00 | $560.00 |
| b. Special Delivery | $560.00 | $560.00 | $560.00 |
| c. Trailer Driver | $640.00 | $640.00 | $640.00 |
| d. Linen Supply and Flatwork Helper | $350.00 | $350.00 | $350.00 |

iii.    a. Experienced route employees may be hired for not more than 30 days at $25.00 per week less than the minimum established in each job classification. Experienced delivery helpers may be hired for not more than 30 days at $15.00 per week less than the minimum established in each job classification.

    b. Inexperienced route employees may be hired for not more than (90) days at $25.00 per week less than the established minimum in each job classification. Inexperienced delivery helpers may be hired for not more than (90) days at $15.00 per week less than the minimum established in each classification.

(xv)    Existing routes of Industrial and Dust Control Route Sales employees who are paid on a commission basis shall receive the following weekly base rate and guarantee increases (computed on the basis of a five (5) day week), effective on the dates indicated:

| | 1128/03 per week | 1/01/05 per week | 11/28/05 per week |
|---|---|---|---|
| Base Rate Increase | $10.00 | $6.00 | $10.00 |
| Guarantee Increase | $20.00 | $12.00 | $20.00 |

i. Family Route Sales Employees:

| | | | |
|---|---|---|---|
| Guaranteed average weekly earnings | $250.00 | $250.00 | $250.00 |

    The guaranteed average earnings for a commission family route sales employee as above provided shall be calculated during the calendar year for those employed on or prior to December 30, 1969, but shall be made every three months. For those employed after that date, the period of calculation shall start with the date of employment and shall be made every three months. If a route sales employee's total earnings are less than thirteen times the guarantee in any quarterly period, the difference shall be paid to the employee in a lump sum within fourteen (14) days following the end of each quarterly period.

ii. Industrial and Dust Control
Route Sales Employees $210.00    $210.00    $210.00

iii. Diaper Service
Route Sales Employees $405.60    $405.60    $405.60

    iv. a.    The Commission rate for once-a-week Route Sales Employees delivery shall be 9.50 percent.

    b.    Commission diaper route sales employees shall receive $1.00 for each new installation, in addition to the commission.

| v. Dust control industrial route sales employees | 11/28/03 per wk | 1/01/05 per wk | 11/28/05 per wk |
|---|---|---|---|
| First $1,000.00 of weekly volume | 10% | 10% | 10% |

C.    **Minimum Rates and Guarantees:**

a. Weekly Guarantee-Inside Production Employees:
All engineers, maintenance employees, porters, elevator operators, washers, washroom employees, washroom truck handlers, soil employees, heavy bulk handlers, rug and mat handlers, linen supply and diaper service dry tumblers, shall be guaranteed a minimum of forty (40) hours of work per week at their regular hourly rate.

b, Guarantee of Hours:

All other inside production employees shall be guaranteed a minimum of thirty-five (35) hours of work per week at their regular hourly rate, with credit for bonus and incentives.

c.  The provisions of this Clause 7.c. (a) & (b) shall not apply during holiday weeks, or in event of a breakdown of six or more hours resulting from causes beyond the control of the Employer, or if the employee fails to report for work for any reason whatsoever.

d. The minimum rates and guarantees provided for herein shall at all times during the term of this Agreement or any renewal thereof, be not less than .20 cents an hour above any applicable Federal or State Minimum Wage Laws.

In the event that the Employer shall grant increases in any wage scale herein contained because of federal, state, or local legislative mandate pertaining to minimum wages, then future wage increases set forth herein shall not apply to those affected employees until full credit for increases given as a result of any such legislative mandate is given to such affected employees.

(e)  Anyone employed as of 11/28/03 making less than the minimum for his classification, after giving effect to the 11/28/03 increases in 7(A)(1) above, shall be brought up to the applicable minimum in 7(B)(1) as follows: $0.25 per hour or the amount necessary to reach said minimum (whichever is less) on March 1, 2003; $0.25 per hour or the amount necessary to reach said minimum (whichever is less) on June 1, 2003; $0.25 per hour or the amount necessary to reach said minimum (whichever is less) on September 1, 2003; and the amount necessary (if any) to reach said minimum on November 27, 2003.  However, no such employee shall make less than $6.50 per hour, after giving effect to the 11/28/03 increases above, effective 11/28/00.

(f)     Employees hired after 11/28/00, other than route employees, may be hired for up to $1.00 per hour less than the applicable minimum rate in 7(B)(1) for the first three (3) months of employment, $0.75 per hour less for the next three (3) months of employment, $0.50 per hour less for the next three (3) months of employment and $0.25 per hour less for the next three (3) months of employment.  It is agreed that such employees shall receive no less than the then applicable minimum rate, three hundred sixty four (364) days from the date of hiring.

8.     **METHODS OF PAYMENT:**

All methods of computing wages, bonus or incentive payments shall be reasonable and intelligible to the employee.  The Arbitrator shall be empowered to hear and determine any complaints with reference to the application of this clause.

9.     **UNIFORMITY OF RATES:**

Except as specifically otherwise provided herein, there shall not be more than one piece rate or incentive rate in any section or department of any plant for similar work or similar operations on a similar machine, nor shall there be more than one rate of commission for similar work by route sales employees in any plant.  In the event that any dispute involving existing different rates or commission rates arises, such dispute may be submitted to the Arbitrator for determination as to the fairness thereof.  In no case, however, shall the present earnings of any worker be reduced as a result of such award or determination.

10.     **PIECE RATES, BONUS PLANS, AND INCENTIVE SYSTEMS:**

A. The Employer shall notify the Union in writing of its intention to revise or install piece rates or incentive methods of payment.  Changes in methods of production may be made by the Employer provided no employee suffers a reduction in wages as a result thereof.  In the event of disagreement or dispute under this Sub-Clause A, the matter shall be submitted to the Arbitrator for determination.

B. The Employer shall notify the Union in writing of its intention to install machinery of a type not previously used by the Employer.  The base, piece, or incentive rates on new machines shall be set so that they shall yield not less than the average straight time hourly earnings existing for the operation at the time of the change-over to the new machines.  In the event that the parties cannot agree upon such rates within three (3) months after the installation of the machinery, the matter may be submitted to the Arbitrator.  The Arbitrator's decision shall be rendered within ten (10) days after the hearing and shall be effective as of the date the machinery was put into operation.

C. In the event that the installation of new machinery results in the displacement of employees, the Employer shall make every reasonable effort to provide such displaced employees with employment in its plant.  If the employer is unable to do so, the Arbitrator shall determine whether severance payment should be allowed.  If the Arbitrator decides the question in favor of the Union, the amount of severance pay due the employee or employees, shall be computed as follows:

1. Under five (5) years of continuous employment, no severance pay;

2. Thereafter, one (1) day for each year of continuous employment (excluding the first five (5) years thereof), but in no event to exceed twenty (20) days.

D. All wage increases shall be incorporated into piece and incentive rates, each of such increases to be incorporated on the basis of the average straight time hourly earnings for the operation at the date of such increase.

11.    **HOURS OF EMPLOYMENT:**

A. _Inside Production Employees:_

1. The regular work week for all Inside Production employees shall be Monday through Friday.

2. Work in excess of (40) hours per week or outside the regular daily schedule of hours shall constitute overtime and shall be compensated for at one and one-half times the regular rate.

B. _Engineers and Maintenance Employees:_

1. The regular workweek for all engineers and maintenance employees shall be Monday through Friday. Time worked in excess of (40) hours per week or outside the regular schedule of hours shall constitute overtime and shall be compensated for at one and one-half times the regular rate.

2. Engineers and maintenance employees, when called in on Sunday, shall be paid double time at the regular rate for all hours worked with a guarantee of at least four (4) hours pay at double time.

C. _Route Employees and Helpers:_

1. All route employees, route sales employees and delivery helpers, except Hand Laundry Division:
a. The days' work shall include truck loading and unloading, as well as paperwork, provided the same are required by the Employer and are performed by the driver after his assigned starting time.

b. No outside employee shall perform any duties on the inside of the Employer's place of business other than such clerical work as is necessary to check in and check out and loading and unloading.

c. The regular work week shall be Monday through Friday, except as provided in Clause 11.C.3. And 11J.

2. All non-commission route employees and delivery helpers:
a. Route Employees

i. Time worked outside the regular workweek shall constitute overtime and shall be compensated for at 1-1/2 times the regular rate.

ii. Time worked in excess of a total of (45) hours a week, inclusive of a daily lunch hour, shall be compensated for at 1-1/2 times the regular rate, such rate to be computed on the basis of a 40 hour week, except as to office towel route employees and delivery helpers.

iii. In addition to the provisions of Article 15 (H), all paid time off (excluding sick leave) shall be considered as time worked in computing overtime pay, unless the paid time off falls on a non-scheduled work day.
iv. Any such employees completing all their scheduled days in any week shall be guaranteed forty (40) hours of work for that week at their regular rate of pay.

b. Office towel route employees and delivery helpers

i. Time worked in excess of a total of (43) hours a week, inclusive of a daily lunch hour, shall be compensated for at 1-1/2 times the regular rate, such rate to be computed on the basis of a (38) hour work week.

ii. In addition to the provisions of Article 15 (H), all paid time off (excluding sick leave) shall be considered as time worked in computing overtime pay, unless the paid time off falls on a non-scheduled work day.

iii. Any such employees completing all their scheduled days in any week shall be guaranteed thirty eight (38) hours of work for that week at their regular rate of pay.

3. Diaper route employees, route sales employees, and delivery helpers:
The presently existing program and method of route operation of each diaper employee with respect to the days of its regular work week schedule, shall continue both with regard to regular route operations and special delivery route employees, subject to the provisions of Article 7(B).

4. Part-time drivers shall not be employed if full-time drivers are not working a full week.

D. **Office Employees – all divisions:**

1. The regular workweek for all office employees shall be Monday through Friday.

2. The workweek of office employees shall be 37-1/2 hours.
3. Time worked in excess of a total of 37-1/2 hours shall be compensated for at one and one-half times the regular rate, such rate to be computed on the basis of a 37-1/2 hour week.

E. **Hand Laundry Division:**
The provisions of this Clause 11 shall apply to the Hand Laundry Division, except as herein modified.

1. All employees regularly employed four or more days a week shall be considered weekly workers for the purpose of vacations, holidays, and sick leave.

2. The regular workweek for all inside production employees shall be 40 hours, consisting of eight hours a day, Monday through Friday.

3. Time worked in excess of the aforesaid schedule shall constitute overtime and shall be compensated for at one and one-half times the regular rate of pay.

4. Drivers and Pushcart Delivery Employees:

a. The workweek for drivers and pushcart delivery employees shall be (40) hours a week.

b. Work in excess of 40 hours a week or outside the regular schedule of hours shall constitute overtime and shall be compensated for at one and one-half times the regular rate of pay.

5. Schedule of Hours:

The employer shall post a schedule of hours for all employees. No change in such schedule of hours shall be made by the Employer unless a request therefore is made prior to the commencement of the work week in which the change is to be made, and provided that a copy of any request for a change in schedule made to the Labor Department is sent to the Union.

### F. Additional Shifts:

Shifts in addition to the regular shifts of inside production employees may be established by the Employer with the prior consent of the Union provided, however, that such additional shifts shall be compensated for as follows:

For work regularly performed by any employee up to midnight, 5 percent above the straight time rate; for work regularly performed by any employee after midnight, 10 percent above the straight time rate. A shift may include one (1) or more employees.

### G. Posting of Schedule:

The Employer shall post a daily schedule of hours for all inside production employees. No change in such schedule or hours shall be made by the Employer unless it notifies the Union in writing at least one week prior to any contemplated change in such schedule of hours.

In the event the Union does not consent to such change of hours, it shall, within two days after such notification, refer the matter to the Arbitrator for his determination. No change shall be made in the schedule of hours until the Arbitrator has made an award in connection with the matter so submitted by the Union to the Arbitrator.

### H. Time Cards:

All employees, except commission route sales employees, shall punch time in and out on a time clock furnished by the Employer. All pay envelopes or pay checks of such employees must contain an itemized statement of all hours worked and rates of pay.

### I. Lunch Period:

All employees shall be entitled to a daily lunch period.

### J. Staggered Work Week:

Anything herein above to the contrary notwithstanding, application may be made to the Union for leave to operate a work week of five working days within six days, for any or all categories of employees, when necessitated by the nature of the business. In the event the Union refuses to consent to the same, the matter shall be submitted to arbitration as herein provided in paragraphs 34 and 35. In the event such five within six days schedule is consented to, or allowed by the Arbitrator, current employees who would otherwise have received overtime pay for Saturday work, will continue to receive the same. Such overtime shall not apply to employees hired after December 1, 1975, or current employees who would not otherwise receive the same.

Anything herein above to the contrary notwithstanding, employees hired on and after November 28, 1990, (as well as those hired between October 1, 1990 and November 28, 1990 who in that period worked exclusively under the conditions set forth in this subparagraph) engaged in hotel, motel or other Hospitality NOG work, may be employed on a work week of five consecutive days within any consecutive seven days. Such five days (regardless of the day of the week) shall be paid at regular straight time rates, the first day after the fifth scheduled day shall be treated for premium pay purposes as if it were a Saturday in a normal Monday to Friday schedule and the second day after the fifth scheduled day shall be treated for premium pay purposes as if it were Sunday in a normal Monday to Friday schedule. Except as expressly set forth in this paragraph, nothing herein contained shall be deemed to deprive any employee working on a five day within seven day schedule of the holiday or other fringe benefit rights such employee would otherwise earn under this contract. An employee working on such schedule shall retain whatever rights such employee may have to bid off the schedule for another job opening if the Employer has an acceptable replacement for such bidding employee.

Anything hereinabove to the contrary notwithstanding, employees in any facility which is engaged primarily in institutional health care work (hospitals, nursing homes, etc.), may be employed on a work week of either (i) five (5) days within any consecutive seven (7) days, or (ii) four (4) days within any consecutive seven (7) days. Such five (5) days (regardless of the day of the week) shall be paid at regular straight time rates, the first (1st) day after the fifth (5th) scheduled day shall be treated for premium pay purposes as if it were a Saturday in a normal Monday to Friday schedule and the second (2nd) day after the fifth (5th) scheduled day shall be treated for premium pay purposes as if it were Sunday in a normal Monday to Friday schedule. Such four (4) days (regardless of the day of the week) shall be paid at regular straight time rates, the first (1st) day after the fourth (4th)

scheduled day shall be treated for premium pay purposes as if it were a Saturday in a normal Monday to Friday schedule and the second (2nd) and third (3rd) days after the fourth (4th) scheduled day shall be treated for premium pay purposes as if were Sunday in a normal Monday to Friday schedule. Except as expressly set forth in this sub-paragraph, nothing herein contained shall be deemed to deprive any employee working on a four (4) or five (5) day within seven (7) day schedule, of the holiday or other fringe benefit rights such employee would otherwise earn under this Agreement.

### K. Shop Chairperson Guarantee:

One inside shop chairperson shall be guaranteed a minimum of 40 hours of work at his or her regular hourly rate, in any week in which the inside production of the plant operates at least 40 hours, provided such shop chairperson is available for such work.

### 12.    REST PERIODS AND WAITING TIME:

A.    All inside production employees, whether hourly, weekly or piece workers shall receive two (2) ten (10) minute rest periods with pay, per day, all year round.
This requirement shall not apply to any employee who works less than 5 hours during the day. Rest periods shall be considered as time worked for the purpose of calculating overtime. Additional time worked to make up for rest periods, shall be paid for at one and one-half (1 ½ ) times the regular rate.

B.    Employees shall be compensated at regular rate of pay for all waiting time resulting from breakdowns unless the Employer requests the employees to leave the plant.

### 13. ILLNESS, SICK LEAVE AND LEAVE OF ABSENCE:

A.    In case of illness or disability, the Employer or his representative shall be notified by the Shop Chairperson or by the employee by messenger, mail or telephone within 24 hours.

B.    Employees absent on account of illness or disability shall be permitted to return to work within a reasonable time. Any employee not working due to a Workers Compensation or Disability injury or illness, shall perform any available light duty bargaining unit work for the Employer at the rate paid by the Employer for such work, provided the employee is certified by an appropriate physician to be capable of performing such work.

C.    An employee desiring a leave of absence shall make a prior request of, and obtain written permission from the Employer. A leave of absence so granted shall not be considered as an absence in determining the eligibility of the employee for vacation with pay under Clause 14 of this Agreement. Employees rehired after returning late (but not more than 60 days late) from a leave of absence to a location outside of the United States shall retain their seniority as of the last date of their scheduled leave of absence if (i) the late return is a result of unforeseeable delays, including, but not limited to, requirements for additional documents to

establish immigration status prior to returning to the United States, and (ii) the employee gives notice to the Employer of a late return as soon as is reasonably practical.

D.    The Employer shall grant sick leave as follows:

### 1. Family and Wholesale Divisions:

a.    All employees shall receive 6 days' cumulative sick leave the second anniversary date of employment and every anniversary date of employment thereafter provided they remain on the job.

b.    Where family route sales employees now receive one week or more of sick leave benefits due to illness, the cumulative benefit herein shall be in lieu of the first six (6) days of such sick leave benefits.

c.    Deduction from pay for absence on account of actual sickness shall not exceed $7.00 per day for sickness for any family route sales employee in the employ of the Employer for one year but less than five years, but shall be limited to five days in any one year for such employee. Family route sales employees with five or more years of employment shall be limited to ten days in any one year. This provision shall be in addition to any other sick leave benefit presently prevailing in each plant.

### 2. Linen Supply, Flatwork, Towel, Industrial, and Diaper Services Divisions:

After one (1) year of employment, each employee shall be entitled to six (6) days' sick leave with pay each year. Starting with the second year of employment and each year thereafter, sick leave pay may be pro-rated at the rate of one (1) day for each two (2) months of employment. As much of each employee's sick leave as is not used during the year shall be regarded as additional vacation with pay to which the employee shall be entitled at the end of the year. Where an employee is entitled to two weeks' vacation with pay apart from credit for unused sick leave, the Employer shall have the option of granting such unused sick leave as additional vacation with pay or of compensating for the same upon the Employer giving at least two (2) weeks advance notice to the employee.

### 3. Diaper Service Delivery Personnel:

Used sick leave of diaper route employees with one or more years of employment shall be paid for during the week the diaper route employee is sick on the basis of one day's sick leave being calculated as one-fifth of the route's previous week's earnings. Unused sick leave shall be added to the vacation or paid for at the end of the year, as heretofore provided. If paid for, unused sick leave shall be paid for on the basis of the annual earnings of the diaper route employee during that year, divided by the number of weeks worked during that year.

E. **All Divisions:**

1. All employees employed one year or more whose employment is terminated shall receive prorated sick leave.

2. Except as otherwise provided in paragraph 13.D.2., no employee shall be forced to take time off in lieu of payment for accumulated sick leave.

3. Method of payment for sick leave, except in the Hand Laundry division, shall, for inside employees, including piece workers, be the formula of the vacation clause; for commission drivers, the average earnings for (52) weeks.

4. Office employees shall receive seven (7) days cumulative sick leave, excepting employees presently receiving more than seven such days shall continue to receive such additional days.

5. The Employer and the Union will take all necessary steps to ensure that this Agreement, and its implementation, complies with the Americans with Disability Act as well as the Family Medical Leave Act.

14.     **Vacations:**

The Employer shall grant vacations as follows:

Vacation with pay shall be provided annually by the Employer to all the employees in the categories and divisions following, continuously employed by the Employer for the years indicated, prior to the commencement of the vacation period:

A. **Office employees - all divisions:**
1.   At least one (1) year        = 2 weeks
2.   At least ten (10) years      = 3 weeks
3.   At least (20) years          = 4 weeks

B. **Wholesale & Hand Laundry Divisions (except Office employees):**
1. At least 1 year, but less than 4    = 1 week
2. At least 4 years                    = 2 weeks
3. At least 10 years                   = 3 weeks
4. At least 20 years                   = 4 weeks

C. **Linen Supply, Flatwork, Towel, Industrial, Family & Diaper Service Divisions (except Office employees):**

1. At least 1 year, but less than 3    = 1 week
2. At least 3 years                    = 2 weeks
3. At least 10 years                   = 3 weeks
4. At least 20 years                   = 4 weeks

D. **Family Route Sales** employees shall receive the vacation allowances set forth in sub-paragraph B except that they shall receive two weeks vacation after three years.

E. Employees who do not qualify at the commencement of the vacation period shall become entitled to their vacations with pay upon completion of their requisite period of continuous employment, as required in this Article 14.A,B,C or D.

F. If an employee otherwise entitled to vacation with pay is absent from his job without reasonable excuse for more than 135 hours in the year for which such vacation pay has been earned, he shall not be eligible for said vacation. This provision shall not be applicable to the Hand Laundry Division. This shall apply only to the first year of employment in all divisions, except for the Family & Wholesale divisions where only one week of said vacation due shall apply. Time lost because of insufficient work or because employee is sent home through no fault of his own shall not be charged against the 135 hours of allowable absence in determining eligibility for vacation pay.

G. An employee employed one year or more whose employment is terminated, shall receive prorated vacation benefits.

H. **Method of Payment - All Divisions except Hand Laundry**

1. Vacation pay for all inside employees, including engineers and maintenance employees, shall be based on average weekly earnings during the months of October through March, inclusive, preceding the vacation period, but in no event shall said vacation pay be less than the minimum weekly guarantee.

2. Vacation pay for all route employees and helpers except family route sales employees, shall be based on regular pay for a full week of work.

3. Vacation pay for a family route sales employee shall be based on his/her average weekly earnings for the twelve months preceding his/her vacation or on the earnings of the route during the vacation period, whichever is greater.

4. Vacation pay for office workers shall be based on regular pay for a full week of work.

5. Hand Laundry Division:

a. Vacation pay for each week of vacation for all weekly employees, including drivers and delivery employees, shall be based on the regular pay for a full week of work.

b. Vacation pay for each week of vacation for all daily workers shall be based on the regular pay for a day's work multiplied by the number of days regularly employed during the week.

c. Vacation pay for each week of vacation for all piece workers and shirt ironers shall be their guaranteed weekly earnings.

d. Vacation pay for each week of vacation for office workers shall be based on the regular pay

for a full week of work.

**I. Vacation Period - All Divisions:**

1  Except as otherwise arranged by mutual agreement of the parties hereto providing for year round vacations, vacations for all employees shall be granted between January 1st and December 31st in each year except during a holiday week and except for those in the wholesale/NOG divisions where vacations shall be granted between January 1st and September 30th (except during a holiday week) in each year. Where the Employer permits vacations during a holiday week, employees shall be eligible for such vacation on a mutually agreeable seniority basis, which may include rotation to equalize vacation opportunities. Disputes under this article may be referred to arbitration.

2.  The Employer shall, on or before December 1st in each year, post a vacation schedule in its plant for all employees and deliver a copy of said schedule to the Union. Such schedule shall set forth the month in which each employee be entitled to a vacation, and each employee shall be given not less than two weeks notice of the vacation period. Vacation shall be scheduled so as to distribute such vacations as equally as possible during each week of each month of the vacation period. The Arbitrator shall have jurisdiction to hear and determine complaints by the Union that the vacation schedule is unreasonable and unfair.

## 15.    HOLIDAYS:

The employer shall grant holidays with pay as follows:

A.  **All employees are to receive the following holidays with pay:**

New Year's Day, Employee's Birthday, Decoration Day, July 4th, Labor Day, Thanksgiving Day, Christmas Day, Roving Holiday. These holidays are to be compensated for regardless of the day of the week on which they fall. The employees shall receive eight (8) hours pay for all holidays falling on a Saturday.

An employee working on his birthday holiday shall be paid at the premium rate paid for working on any other holiday, unless such Birthday holiday falls during any other holiday week.

1.  Roving Holiday:  In addition to the holidays set forth in Article 15 (A), linen supply, flatwork, towel, industrial and diaper route employees and helpers shall receive an additional day off with pay each year.  All other employees covered by this Collective Bargaining  Agreement with at least one year of employment, shall also receive one additional day off with pay each year.  All employees hired on or after November 30, 1982, shall become eligible to receive an additional day off with pay each year commencing on the first anniversary of the commencement of their employment.

2.  The Roving Holiday is to be fixed by the Employer and employee in the order of seniority, provided, however, that such day off shall neither be taken during a holiday week nor added to the vacation of the employee.

3.  In addition to the holidays set forth in Article 15(A), employees covered by this Collective Bargaining Agreement shall also receive one additional day off with pay each year in remembrance of Martin Luther King, Jr.  Such Day of Remembrance shall be granted on the day requested by the employee provided:

a. the employee gives at least two weeks prior notice of the requested date, and;

b.  the needs of the business are not adversely effected by excessive requests for the requested date, and;

c.  that such Day of Remembrance shall not be taken during a holiday week.

Anything herein contained to the contrary notwithstanding, the Employer, by notice given by it prior to January 1st of any year, may elect to close down on the next succeeding January 15 and have such day as the one day celebrated in remembrance of Martin Luther King, Jr.  If not used, such day shall be paid for by the employer or added to sick leave.

**B.  Method of Payment:**

1. All Divisions :

a. Holiday pay for each inside hourly employee shall be computed at his regular straight time rate of pay multiplied by the number of hours provided in the schedule for the same day in the week preceding the holiday week.

b. Holiday pay for each piece worker shall be computed upon the earnings during the regular work week in which the holiday occurs divided by the number of days worked during said regular work week.

c. All weekly employees shall receive their regular weekly salary without deductions during the holiday week.

d. Holiday pay for each family route sales employee shall be $15.00 in addition to his commission earnings for the week in which the holiday occurs.

e. Holiday pay for diaper route sales employees shall be based on one-fifth of the previous week's earnings.

C.1.  The employees right to holiday pay in all divisions except Hand Laundry, shall be conditioned upon regular attendance during the week of such holiday, and attendance at least once, when requested, after reasonable notice for makeup work during the holiday week or during the

week preceding or following the holiday week. The employee's right to holiday pay shall not be affected by absence from work for reasonable cause during the holiday week.

2. A new employee shall not be entitled to holiday pay until the employee has completed a thirty (30) day trial period.

D. When a holiday herein above set forth occurs during an employee's vacation, the worker is to be paid for the holiday at eight hours, in addition to his vacation pay.

E. No work shall be performed on the New Years Day, Thanksgiving or Christmas holidays without the consent of the Union, nor shall the failure to work on any of said holidays as a makeup day affect the employee's right to receive holiday pay for any of such days. Any employee required to work on any of the other holidays as makeup days, shall be entitled to receive one compensatory day off without pay, for every two such holidays worked by such employee as makeup days. Such compensatory days off shall be on dates mutually agreeable to the employer and the employee upon no less than sixty (60) days request to the Employer, but nothing herein contained shall be deemed to require the employee to request or take such compensatory days off.

F. Under no circumstances shall diaper route sales employees work on New Year's Day, Christmas Day, or Thanksgiving Day.

G. **Make-up Time:**

1. All Divisions:
The Union recognizes the necessity for makeup work during a holiday week or during the week preceding or following the holiday week. The Employer shall make reasonable efforts to minimize the need for employees to work make-up time. Such make-up time shall first be offered on a voluntary basis to employees capable of doing the required work; if a sufficient number of employees do not volunteer, the remaining number of employees required shall be picked in reverse order of seniority from those employees capable of doing the required work.

   a. Makeup work performed on a non-scheduled workday (other than the holiday or Sunday) shall be compensated for at 1-1/2 times the regular rate of pay.

   b. Makeup work performed on a scheduled workday which is a holiday, shall be compensated for at 2-1/2 times the regular rate of pay (which shall include the holiday pay).

   c. Makeup work performed on a Sunday shall be compensated for at 2 times the regular rate of pay.

2. Family Divisions:

Route sales employees, requested to do make-up work on a Saturday during a week in which a

paid holiday occurs, shall receive 1/5 of his or her weeks earnings for the business week in which the Saturday falls for such Saturday work (in lieu of the $15.00 holiday pay and $20.00 pull out pay).

4. Linen Supply, Flatwork, Towel, Industrial and Diaper Service Divisions:

In a plant operating six (6) days, non-commission route employees requested to make-up time lost on a holiday, either on Sunday, or on the employee's day off, shall be paid at a rate of time and one-half with a minimum of eight (8) hours, excluding the lunch period.

H.
All holidays recognized as such hereunder which fall on a Sunday, shall be observed on the following Monday. A holiday shall be considered as time worked in computing overtime pay, unless the holiday falls on or is celebrated on a non-scheduled workday.

16. **GOOD HEALTH DAY:**

All employees shall receive annually a day off with pay to be known as "Good Health Day", provided proof of attendance is furnished to the Employer by the employees' physician and further provided that the time for said Health Day be mutually agreed upon between the Union and the Employer.

17. **BEREAVEMENT PAY:**

All employees in all divisions, shall, after twelve (12) months of employment, receive up to three (3) days pay for actual wages lost and up to one week unpaid leave at the employee's request in the event of the death of a mother, father, spouse, child, brother, sister, mother-in-law, father-in-law or grandparents of the employee.

18. **JURY DUTY**

When an employee who has completed one (1) year of employment with the Employer is summoned for jury duty, he shall be compensated by the Employer for up ten (10) days in any contract year for each day he otherwise would have worked in an amount representing the difference between his basic salary including incentive and piece rate earnings for those days and the payment such employee receives for jury duty. Any employee summoned for jury duty shall furnish evidence to the Employer, upon request, that he or she reported for or performed jury duty on the days for which the employee claims compensation.

19. **UNION ACTIVITY**

A. **Stewards:** It is hereby agreed that the Union may have duly

accredited representatives to be known as "Stewards" in each plant, to be selected by the Union.

1. There shall be one (1) steward for each first line supervisor and at least one (1) steward per shift. The Union will notify the Employer in writing of the names of the persons selected as stewards. At least one steward in each facility shall be a driver.

2. It shall be the duty of the stewards to attempt to the best of their ability to see that the terms, provisions and intentions of the Agreement are carried out and further to handle under the provisions of Article 34 (Grievance Procedure) such grievances as are referred to them.

3. It is further agreed that stewards will, before leaving their regularly assigned work to perform such Union duties as specified herein, secure the permission of the appropriate Supervisor or Plant Manager. Such permission shall not be unreasonably denied.

4. The Employer agrees that there shall be no discrimination against stewards.

B. **Union Bulletin Board:** The Employer shall provide one (1) bulletin board for the exclusive use of the Union which shall be placed near the employees' time clock or in a place to be mutually agreed upon by the parties. Union notices stating the time and place of union meetings, union elections, results of union elections and appointments, union social affairs and union dues may be posted upon the union bulletin board.

20.    **INSURANCE:**

A. The Employer agrees to contribute sums of money equal to a stated percentage of its payroll to the Laundry,Dry-Cleaning Workers & Allied Industries Health Fund (Social Insurance and Retirement) all as provided by the terms of the Supplemental Agreement attached hereto and marked "Exhibit A" and incorporated herein as though fully and at length set forth. The Employer agrees to also contribute the sum of $4.50 per month to the Laundry,Dry-Cleaning Workers & Allied Industries Health Fund (Social Insurance Fund) for each of its regular family route sales commission employees who work at least one day in the month for which payments are made. Such sums shall be used to provide dental services for the spouse (if any) of any such route sales commission employee; all in accordance with a schedule of dental benefits as established by the Trustees of the Fund. Payment shall be due no later than the 10th day of the month following the month for which contributions are made.

B. The Employer agrees to contribute sums of money equal to a stated per capita contribution to the Laundry,Dry-Cleaning Workers & Allied Industries Supplemental-

Retirement Fund, all as provided by the terms of the Supplemental Agreement, attached hereto and marked "exhibit B". The said terms, covenants, and conditions of "Exhibit B" are incorporated herein as though fully and at length set forth.

C.(1)    The contribution rate to the Insurance Fund (Social Insurance) shall be as follows, effective:

| 12/1/03 | 12/1/04 | 12/1/05 |
|---------|---------|---------|
| 11% | 11½% | 12% |

(2)    The contribution rate to the Insurance Fund (Retirement) shall be eight tenths of one percent (.008) effective 11/28/03.

(3)    The contribution rate to a revised Scholarship and Education and Legal Services Fund shall be two tenths of one percent (.002) effective 11/28/03.

21.    **TRANSFER OF WORKERS WITHIN THE PLANT:**

The Employer shall have the right to reasonably shift employees within the plant, provided that such shift does not result in a decrease in pay and provided, further that the employees so shifted will be paid no less than the established rate for the work from which they are shifted or for the work to which they are shifted, whichever is greater.

If such shift is temporary or is made by reason of an employee's induction into the armed services, the employee affected shall receive his former rate of pay when restored to his former job, plus such increases, if any, as were provided subsequent to the shift of said employee. The Union shall have the right to refer to the Arbitrator the reasonableness of such shift.

22.    **RULES AND REGULATIONS:**

The Employer shall have the right to make reasonable rules and regulations for the conduct of the business, providing that the employees do not suffer thereby and that such rules and regulations are not inconsistent with any of the provisions of this Agreement.

Anything to the contrary contained in Clause 35 hereof, and in the manner and to the extent permitted by law, it shall not be a violation of this Agreement and shall not be cause for discharge of any employee to refuse to cross a picket line of the Amalgamated Service and Allied Industries Joint Board, or to cross a picket line of any other union if such picket line has been recognized by the Manager of the Amalgamated Service and Allied Industries Joint Board.

23.    **ENGINEERS AND MAINTENANCE:**

A.    The Employer shall not require an engineer to do anything which would be grounds for the revocation of the engineer's license.

B.    The Employer shall not make any charge for tools required by maintenance employees in the performance of their duties.

C.    Only engineers and maintenance employees shall operate any part of a power plant or the machinery or equipment thereof.

D.    Only auto and truck mechanics and mechanics' helpers shall render any service on a vehicle. The number of mechanics' helpers shall not exceed the number of mechanics employed.

24.    **SPECIAL LEAVE FOR ORGANIZING PURPOSES:**

Employees covered by this contract shall be eligible for a Special Leave for union organizing purposes in the Laundry and Linen Supply Industries. Requests for such leave shall be given in writing to management thirty (30) days before the leave is scheduled to begin. No more than one employee per Employer location may be on such Special Leave at one time **except by mutual agreement**. No such Special Leave may exceed one hundred eighty (180) days **except by mutual agreement**. No employee shall be eligible for such special leave if the granting of the same would create a material hardship for the Employer and there are not immediately available replacements for the employee granted such Special Leave. During such Special Leave, the Employer will continue the seniority of the employee or employees on leave and the accrual of benefits based on seniority. The Employer shall have no obligation to pay wages or fringe benefit contributions during such leave and shall receive credit for any sick leave days paid by the Union to the employee, during the Special Leave (the same to be applied against the Employer's required sick leave payments to such employee accruing during the said Special Leave).

The Union shall have the right to require the Employer to provide four (4) paid man days of Special Leave for Political purposes, per each of its facilities covered by this Agreement. The employee(s) receiving the leave, as well as the time(s) of such leave, shall be mutually and reasonably agreed upon between the Employer and the Union.

25.    **ROUTE EMPLOYEES, CONTRACTS, SECURITY, DISCRIMINATION:**

A.    Contracts - All Divisions:

All existing individual contracts between the Employer and the route employees shall continue in full force and effect except as to such provisions thereof as are inconsistent with the specific provisions of this Agreement, which inconsistent provisions shall be deemed null and void.

The Employer reserves the right to continue to require individual contracts with present and future route employees or such other employees as come in contact with the trade of the Employer, containing the usual provisions and negative and restrictive covenants, subject however, to the provisions hereof. The Union and the Employer agree not to countenance any violation of such contracts on the part of the route employees.

B.    Security - All Divisions:

In the event that any route employee is hereafter required by the Employer to post cash security or indemnify the Employer against loss, the Union may require that such cash security be deposited in a special trust account subject to withdrawal upon the joint signature of the Manager of the Union and the Employer. Employers retaining such cash security shall pay to the respective route employees posting the security, interest at a rate not less than the prevailing savings bank rate of interest, and shall return said security that the employee may be entitled to within thirty (30) days of termination of employment.

C.    Arbitration of Individual Agreement - All Divisions:

The Arbitrator shall have jurisdiction to hear and determine: (1) complaints by route employees or route sales employees of discriminatory treatment by the Employer resulting in an impairment of earnings; and (2) complaints by the Employer of breaches by route employees or route sales employees of the negative covenants of their individual agreements with the Employer.

The arbitration procedure established in this Agreement shall be the exclusive means for the determination of any such disputes between the Employer and the route employees or route sales employees. Such individual agreements shall be deemed modified accordingly.

D.    Reduction, Elimination, and Consolidation of Routes:
    1. Linen Supply, Flatwork, Industrial and Diaper Service Divisions:

If the gross volume of business of the route of a route sales employee requires the route sale employee to regularly perform overtime work, the Employer may reduce said volume of business to the extent necessary to eliminate overtime work, but if it reduces said volume to a point where the route sales employee affected does not have a full week of work, it shall pay said route sales employee not less than the commission the employee would have received if said volume of business had been reduced only to the extent necessary to eliminate the overtime work. The Employer shall not completely

eliminate or consolidate any route or routes, involving the discharge of a route sales employee without the prior mutual agreement of the parties. The Arbitrator shall have the right to hear and determine disputes concerning the reduction of a route sales employee's earnings resulting from the rearrangement of routes.

2.    Diaper Service Division:

a.  The minimum weekly wage herein provided for diaper routes is no indication of the business to be served on such routes and the parties recognize that the operation of routes at or near the minimum is economically unsound.  Should a diaper service route remain at or below the minimum for a period of four (4) weeks, steps shall be taken to correct the situation. This clause is not to apply to the slow period from June 1st to September 1st.

b.  When a diaper route is split, the route sales employee shall be guaranteed the earnings of the route for not less than eight (8) weeks.

3.                   Family and Wholesale Divisions:

a. The Employer shall not eliminate or consolidate any routes without the consent of the Union.  In the event a dispute arises as a result of a discharge of a family route sales employee by reason of consolidation, said dispute shall be submitted to the Arbitrator under this Agreement for final and binding determination.

b.     It is accepted in principle that any family laundry route on which a route sales employee earns less that $250.00 per week under normal conditions, shall be deemed a sub-standard and economically unsound route and shall give rise to a grievance on the part of either party.  In the event that such grievance cannot be adjusted, it may be submitted to the Arbitrator and the Arbitrator shall be empowered to issue an award reorganizing the route.

E.     Special Provisions- Route Employees, Route Sales Employees, Delivery Helpers:

         1. Family and Wholesale Divisions:

         a.  Theft

The Employer shall be responsible for all collections lost through holdup or theft provided the route employee reports the same immediately to the police.

         b.     Change of Service

In case of change of service, new services, or elimination of service, route employees shall be guaranteed their average earnings based on the (12) twelve weeks preceding such change, addition or elimination for eight (8) weeks thereafter.  If the change, addition or elimination shows a continuing loss to the route employee, the Union shall  endeavor to adjust the matter with the Employer. If no Agreement is reached, the matter shall be referred to the Arbitrator for determination.

         c. Commission on Credit Slips.

Route sales employees shall receive commission on credit slips and checks given to customers by the Employer for loss or damage, and used by customers in part or full payment of any bill for services rendered.

         d.  Equalization of Work.

The Employer shall equalize the work of the route employees throughout the five workdays, Monday through Friday.

         e.  Seniority.

In the event of a route vacancy, the route sales employees with the greatest seniority may submit bids for such route.  The Employer and the Union shall jointly determine who is to fill the vacancy.

         f.  C.O.D. Deliveries.

The Employer may not compel route employees to extend credit.  The C.O.D. policy and method of collections heretofore practiced in the industry shall continue without modification.

2.      Linen Supply, Flatwork, Towel, Industrial and Diaper Service Divisions:

         a.  In bidding for open commission diaper routes, seniority shall govern, provided, however, that the Employer's business is not adversely affected thereby.

         b.  When a diaper route is open because of illness or vacation, preference shall be given to the route rider with the greatest seniority, provided, however, that the Employer's business is not adversely affected thereby.

         c.  If a deduction is made from a diaper route sales employee's pay as a result of absence from work on any scheduled working day, it shall be calculated on the basis of one-fifth of the previous week's earnings.

         d.  When a diaper route sales employee who extends credit to a customer pays the full bill for such a customer, he shall receive his full commission for such a customer.

         e.  When a diaper route sales employee is authorized by the Employer to extend credit to a customer and the bill is not collected, the diaper route sales employee shall be paid his full commission for such customer.

         f.  Diaper route sales employees shall not be required to count soiled diapers, except

as herein provided.

g.   The Employer shall use reasonable efforts to convince its customers to bag all sorted merchandise and to place bags in a consistent location for pick-up.

h.   The Employer shall use reasonable efforts provide route employees with clean bags on a daily basis.

F.   <u>Maintenance of Trucks and Vehicles - All Divisions:</u>

The Employer shall maintain the trucks and vehicles in safe and efficient condition.

<u>Double Parking Tickets – All Divisions:</u>

G.   The Employer shall pay all double parking tickets, if, but only if, (i) the double parking is authorized by the Employer, and (ii) the tickets are turned in by the driver to the Employer no later than one (1) working day after issuance.

H.   Whenever practical, the Employer shall employ only regular, full-time Driver Helpers. The Employer may employ temporary Driver Helpers only when the use of regular full time Driver Helpers is clearly impractical.

I.   Route Jumpers working on commission routes shall receive the commission of the routes to which they are assigned for the day, or Jumper's pay, whichever is greater.

J.   Route Helpers driving any day at the request of the Employer shall receive the applicable Driver's rate for that day.

26.   **PREVIOUS WORKING CONDITIONS:**

Any customs, working conditions, or practices existing at the time of the execution of this Agreement more favorable to the employees or the Union than the provisions of this Agreement, shall be continued.

27.   **FEDERAL, STATE, MUNICIPAL LAWS, ORDINANCES, RULES AND REGULATIONS:**

The Employer agrees to comply with all Federal, State, and Municipal laws, ordinances, rules and regulations covering the workers in the industry; to grant the employees all benefits provided for by said laws, ordinances, rules and regulations.

The applicable laws, ordinances, rules and regulations are made part of this Agreement as though fully and at length set forth herein. The Union shall have the right to examine all books and records of the Employer to ascertain whether the Employer is complying with said laws, ordinances, rules and regulations.

28.   **EMPLOYER NOT TO DO PRODUCTIVE WORK:**

No Employer or person having any proprietary interest in the Employer such as an officer, director or partner, shall perform productive or delivery work, except as provided in Clause 1.B.

29.   **MOVING:**

In the event that the Employer moves one or more of its establishments to another location, this Agreement shall continue in full force and effect with reference to such Employer for all its establishments. In the event of such move, if the transferred employee is required to pay added fare, the employee shall be compensated by the Employer for such added traveling expenses. No Employer whose business has one or more branches shall permanently transfer any employees from one branch to another without prior consultation with the Union.

30.   **MILITARY SERVICE:**

In the event that an employee has enlisted or hereafter enlists, or has been or is conscripted into the armed forces of the United States, or has been or is called into service as a member of the National Guard or Army, Navy or Marine Reserve, the employee shall, upon discharge from service, be reinstated to the employee's former position with the Employer with all rights and privileges enjoyed by the employee at the time of entrance into service and such further rights and privileges as are in effect under the Agreement between the Union and the Employer in force at the time of reinstatement. The Employer shall have the right to discharge any person hired to replace the reinstated employee.

31.   **HEALTH & SAFETY**

A.   **General**

The Employer shall make reasonable provisions to assure the safety and health of its employees during their hours of work. The Manager of the Union shall have the right to designate a representative to make inspections of the Employer's plant and trucks for the purpose of ascertaining whether the Employer is in compliance with laws, ordinances, rules and regulations concerning health and safety. The Union agrees to cooperate with the Employer to ensure that all supervisors and associates comply with such reasonable rules,

regulations and practices as may be necessary to provide safe, sanitary, and healthful working conditions.

Both the Union and the Employer recognize that there are specific obligations under Federal, State and local standards or guidelines including those addressing hazard communications, lockout/tagout, and blood borne pathogens. Employees shall be provided with applicable safety and health information.

B.  **Protective Equipment:**

The Employer shall make available appropriate personal protective equipment at no cost to the employee except in situations involving intentional damage or negligence. Appropriate respiratory protection will be made available to all continuous roller towel employees.

C.  **Protection from Heat Stress**

The Employer shall provide an adequate number of clean drinking fountains or bottles with cool water and clean cups to allow easy access by employees for frequent drinking. In hot environments the Employer shall provide a drink supplement (Gatorade) in adequate quantities to last all day. The Employer shall take all reasonable measures to review reducing heat exposure including exhaust ventilation, fans, air cooling, coverage of steam and other hot equipment, and will consider any recommendations provided by the Safety and Health Committee.

D.  **Ergonomics Program**

The Employer shall comply with the OSHA ergonomics regulations promulgated in November 2000.

E.  **Sanitation**

Restrooms shall include appropriate lighting, mirrors, floor mats and will be stocked with all necessities. The restrooms will be kept free of clutter and maintained in a sanitary condition. The rest rooms will be open during working hours, lunch and rest periods, unless temporarily closing is necessary for repair, cleaning, or remodeling. Handwashing facilities will be made accessible to employees.

F.  **Protection from Bloodborne Pathogens:**

a.  Protective Equipment:  For employees with potential occupational exposure, such as skin contact, to blood or other potentially infectious materials, the Employer shall provide, appropriate personal protective equipment. This shall include (but is not limited to) gloves, gowns, coats, face shields or masks and eye protection. Personal protective equipment will be considered "appropriate" only if it does not permit blood or other potentially infectious materials to pass through to or reach the employee's clothes, skin, eyes, or mouth, under normal conditions of use. The Employer shall repair or replace personal protective equipment as needed to maintain its effectiveness, at no cost to the employee, except in cases of intentional damage or negligence. Disposable (single use) gloves such as surgical or examination gloves, shall be replaced as soon as practical when contaminated or as soon as feasible if they are torn, punctured, or when their ability to function as a barrier is compromised.

b.  Vaccinations:  The company shall offer the Hepatitis B vaccination series to all employees with potential occupational exposure to blood within ten (10) working days of initial assignment, unless the employee has previously received the complete Hepatitis B vaccination series, antibody testing has revealed that the employee is immune, or the vaccine is contraindicated for medical reasons.

G.  **On-the-job Injury**

All injuries no matter how minor must be reported by the employee to his/her immediate supervisor, immediately upon occurrence.

H.  **Joint Safety and Health Committee**

A Joint Safety and Health Committee ("Committee") will be established by the Employer and the Union, composed of three (3) members of the bargaining unit selected by the Union and up to three (3) members of management selected by the Employer. The Committee shall be organized to provide assistance in identifying and eliminating potential safety hazards throughout the facility. The General Manager or his/her designee will coordinate the meetings of the Committee; set agenda with input from members; assist with resources and technical assistance; and closely monitor all documentation including meeting minutes, activities and committee recommendations to ensure appropriateness, effective resolution, and compliance with applicable laws, regulations, code provisions, policies and /or procedures. This Committee shall meet at least once a month and will make a plant safety tour once every two months. Additionally, members shall become familiar with production

processes and working conditions and will make recommendations to management to improve safety and health in the workplace. The Employer will consider all the recommendations from the Committee in good faith and respond to each recommendation, including deadlines for fixing problems, where appropriate.

I.   **Safety and Health Related Training**

The Employer shall provide job safety and health related training as required by Federal, State, and Local regulations. Such training shall take place at intervals that comply with the applicable regulation or standard.

J.   It shall be the obligation of all employees to wear and / or utilize appropriate protective equipment provided hereunder when there is a bona fide health and safety requirement that such equipment be worn and provided that there is no bona fide medical reason that the employee can not wear or utilize such equipment.

K.   Elimination of Fire Door Hazards. All fire exit doors shall remain unlocked from the inside at all times. All fire exit doors shall be equipped with a panic bar for opening. No other locks shall be allowed at any time on fire exit doors."

32.   **OTHER UNION AGREEMENTS:**

The Employer shall give two weeks written notice to the Union of intention to engage in any work in any division of the laundry industry other than that in which it is presently engaged, including but not limited to family, wholesale, linen supply, flatwork, diaper service, home linen supply, dry cleaning, fur storage, rug storage or hand laundry work.

In the event that any Employer becomes engaged in any such division of the laundry industry, other than that in which it is presently engaged, all provisions of the Agreement now or hereafter in effect between the Union and the employees shall forthwith become applicable to all employees, and where applicable it shall include the requirements of the employment of a wholesale driver operating a vehicle exclusively used to make pick-ups and deliveries from such wholesale accounts. Any violation of this clause shall be referred to the Arbitrator for determination.

33.   **Discharges And Disciplinary Action:**

A.      No employee will be disciplined or discharged except for just cause. The Employer will promptly advise the Union, with a copy to the employee, of any discipline or discharge within ten (10) working days after he has knowledge of the action that necessitated the discipline. In the event the Union claims the discipline or dis-

charge is unjust, the grievance may be referred directly to Step 3 of the grievance procedure within ten (10) working days of the occurrence of the dispute. If an employee is found to have been discharged or disciplined without just cause such employee shall be reinstated with pay for lost time, if any, and with full seniority.

B.      Disciplinary Meetings: Any employee who is required to attend a disciplinary interview or investigation that might lead to discipline, shall have the right to have a Union representative accompany him. Written warnings issued to employees for lateness or absenteeism will become void after six (6) months from date issued and may not be used as a basis for discharge or disciplinary action after becoming void.

34.   **Grievance Procedure:**

A.      Procedures herein shall be the exclusive means for the determination of all disputes, complaints, controversies, claims or grievances whatsoever concerning the meaning, application, performance or operation of any provision of this Agreement.

B.      Should a grievance arise between the Employer, Union, or employee, such grievance shall be taken up for settlement under the following procedures:

Step One:   The grievance shall be verbally presented by the employee involved and the Steward, where requested by the employee, to the employee's supervisor within ten (10) working days of when the employee first had knowledge of the facts which gave rise to the grievance.

Step Two:   If no satisfactory settlement is reached in Step One, the grievance shall be reduced to writing by the employee, Steward and/or Business Agent within fifteen (15) working days of when the employee first had knowledge of the facts which gave rise to the grievance. The Employer shall provide a written response to the grievance within five (5) working days thereafter.

Step Three:   If the Union is not satisfied with the written response, the Union shall notify the Plant Manager that it is not satisfied with the Employer's written response to the grievance within ten (10) working days of the receipt of the Employer's response. A meeting shall be held, within ten (10) working days of the receipt of the Union's submission to the Plant Manager, between the employee, Stew-

ard, Plant Manager, and any other necessary representatives concern-
ing the grievance. Within seven (7) working days after the meeting,
the Employer shall provide a written response to the grievance.

"Step Four: Either the Employer or the Union may appeal to arbitra-
tion any grievance that is not settled or adjusted pursuant to the above
procedure by filing a written request (registered or certified mail or
facsimile transmission, to the arbitrator with a copy sent by the same
means to the other party) for arbitration, within ten (10) working days
thereafter. It is the intention of this provision, that failure to comply
therewith shall constitute a waiver of the right of the party so failing
to comply, to seek and require arbitration."

C.  Should the Employer have a grievance against the Union or an em-
ployee, the above four steps shall be followed, except that the parties
shall be deemed reversed for the purposes of steps one, two and three.

D.  Subject to the provisions of Article 19, Stewards shall be paid by the
Employer for time reasonably spent during their regularly scheduled work-
ing hours in investigating, settling, and presenting grievances under this
Article. Employees shall be paid for time spent in any meetings with rep-
resentatives of the Employer when requested by the Employer.

35.  <u>**Arbitration:**</u>

A.  The parties hereto designate Philip Ross and Beverly Gross as the
Arbitrators under the terms of this Agreement.  Said arbitrators shall
act on a rotating basis to hear the arbitrations brought under this
Agreement and shall designate the location of the hearing. Daniel
Brent is designated as a substitute arbitrator in the event of the
unavailability of Philip Ross and Beverly Gross.

B.  Any and all complaints, grievances or disputes arising between the
parties hereto under, out of, or in connection with or in relation to this
Agreement or in the interpretation, performance, termination or any
alleged breach thereof, shall be forthwith referred for arbitration and
final determination to the Arbitrator. The Arbitrator is empowered to
include in the award mandatory and injunctive relief and to assess
damages including interest. Any specific reference in any provision
of this Agreement for arbitration shall not be construed as a limitation
or a waiver of arbitration with respect to any and all complaints,
grievances or disputes arising out of any other terms of this
Agreement where no specific reference is made.

C.  The parties consent that any papers, notices or process including
subpoenas necessary or appropriate to initiate or continue an

arbitration hereunder or to enforce or confirm an award may be served
by ordinary mail directed to the last known address of the interested
parties or their attorneys.  The service of any other notices that may be
required under the Civil Practice Law and Rules is hereby expressly
waived.

D.  All determinations, decisions and awards shall be final, conclusive
and binding upon all the parties hereto, their heirs, executors,
administrators, assigns, or successors in interest and upon any
Employer and employee covered by this Agreement. The law of the
State of New York shall apply in the enforcement of this Agreement,
except as provided otherwise herein.

E.  The Arbitrator may call a hearing on at least (24) hours notice in writ-
ing to the Employer and the Union and to appear at any hearing held by
the Arbitrator in connection with any dispute.

F.  The parties hereby expressly waive the oath of the Arbitrator and con
sent that the Arbitrator may proceed with the hearing on the submis
sion.

G.  In the event that a party fails to appear before the Arbitrator after the
notice aforesaid, the Arbitrator is authorized to proceed with the hear-
ing and may decide the matter in dispute upon the testimony adduced
by the party appearing at such hearing. The Arbitrator shall decide
any dispute submitted to the Arbitrator within ten (10) days after sub
mission, except in discharge cases, where the decision shall be ren-
dered within one week. The failure of the Arbitrator to render a deci-
sion or award within the aforesaid prescribed time, shall not affect the
validity of said award. All decisions of the Arbitrator shall be effec-
tive as of the date the decision is rendered except as otherwise pro
vided in this Agreement.

H.  The procedure established in this Agreement for the adjustment of
disputes shall be the exclusive means for determination of such dis-
putes, including strikes, stoppages, lockouts, and any and all claims,
demands and actions arising there from except as expressly provided
otherwise in this Agreement.  No proceeding or action in a court or
law or equity or administrative tribunal shall be initiated other than to
compel arbitration and to enforce an award.

I.  This paragraph shall constitute a complete defense and ground for a
stay of any action or proceeding instituted contrary thereto.

J.  In the event the Employer fails to abide by an award of the Arbitrator,
the Union may take such other action as it deems appropriate notwith-

standing the provisions of Article 39 or any other Article.

K.  The expenses of the Arbitrator shall be paid by the parties hereto in such amounts and in such manner as the parties have agreed. In the event the Employer fails to make the agreed upon payment, the Union may strike or take such action as it deems appropriate, irrespective of any other provision of the Agreement.

**36.    Sexual Harassment:**

The Union and the Employer recognize the problem of sexual harassment in the workplace and are committed to ending it. Sexual harassment shall be defined as: unnecessary physical contact, touch or patting, suggestive and unwelcome remarks, jokes, comments about appearance and deliberate verbal abuse, leering and compromising invitations, use of pornographic pictures at the workplace, demands for sexual favors and physical assault. Grievances under this clause will be handled with all possible speed and confidentiality. In settling the grievance, disciplinary action may be taken against employees (both bargaining unit and non-bargaining unit) and supervisors who engage in any activity prohibited under this clause.

**37.    REAL PARTY IN INTEREST:**

It is mutually agreed that the Union is the real party in interest under the terms of this Agreement with respect to the proper enforcement of any of its provisions, and no individual member of the Union may take any action with reference to any subject matter covered by this Agreement without the consent of the Union. No member of the Union shall have the right to institute any legal proceeding in any court or before any administrative tribunal against an Employer on account of any matter directly or indirectly arising out of this Agreement or for the alleged breach or threatened breach thereof, without the written consent of the Union. No Employer, who is a member of an Association signatory to this Agreement, shall have the right to institute any legal proceeding in any court, which might otherwise be maintained under the provisions of this Agreement against the Union or any member thereof on account of any matter directly or indirectly arising under this Agreement or for the alleged breach or threatened breach therof without the written consent of the Association of which the Employer is a member. Anything to the contrary notwithstanding, nothing in this Clause shall be construed as a modification of the provisions of this Agreement governing the submission of complaints, grievances, and disputes to arbitration and the determination thereof.

**38.    PROHIBITION OF LAYOFFS BECAUSE OF TRANSFER OF WORK:**

The Employer may not lay off an employee because of a transfer of work or the threatened transfer of work from its present plant to any other plant without the consent of the

Union. In the event that the Union refuses to consent to such a layoff, the Employer may submit the matter to arbitration for determination pursuant to the arbitration provisions contained in Clause 35. Anything to the contrary notwithstanding, the Union may promulgate such reasonable rules and regulations governing the transfer of work affecting employees of the Employer from and to whom the work is transferred for the purpose of promoting and furthering the security and tenure of employees, provided, however, that if an Employer objects to such rules and regulations, such objection shall constitute a dispute and shall be subject to arbitration in accordance with the procedure in Clause 35.

**39.    STRIKES, LOCKOUTS AND STOPPAGES:**

A.  This Agreement provides for an orderly adjustment of all matters in dispute between the parties. It is agreed that strikes, lockouts, sympathy strikes, and stoppages of work are prohibited. In the event, however, of an alleged violation of Clauses 6, 20, 24 and 35, the Union shall be free, upon the authorization of its Manager, to take such action as it deems appropriate.

B.  In the event the arbitration provisions contained in this Agreement shall become null and void as provided in Clause 35, the Union shall be free to take such action as it deems appropriate, in the event of any grievance, complaint or dispute which may arise.

**40.    LAYOFFS AND SENIORITY:**

Seniority shall govern in cases of layoff and choice of vacation period. The right of the Employer to lay off permanent employees shall be exercised only in accordance with the grievance procedure in Clause 34 and 35. In case of a promotion, the Union shall be notified before the promotion is made.

Shop Chairpersons shall have super seniority in cases of layoff and in choice of vacation.

**41.    MERGER, CONSOLIDATION, SALE OR CLOSING:**

A.  In the event of the merger, consolidation, sale in whole or in part, or closing of the Employer's business, the Employer, its successor or purchaser, shall be jointly and severally responsible for any monies or benefits than due the employees. The successor or purchaser shall be bound by the terms, covenants and conditions of this Agreement.

B.  If an employee is laid off as a result of merger, consolidation, sale in whole or in part, or the closing of a plant, the employee shall be entitled to severance pay computed as follows:

i.    Under five (5) years of continuous employment, no severance pay.

ii.  Thereafter, one (1) day for each year of continuous employment (excluding the first five (5) years thereof), but in no event to exceed twenty (20) days.

iii.  For the purpose of severance pay only, there shall be no portability of continuous employment after payment has been received by the employee.

C.  The provisions of this article shall not be construed to apply to an employee who shall continue to be employed by the successor Employer, without loss of seniority, for at least six (6) months after the completion of any merger, consolidation or sale.

42.  **PARTIES BOUND:**

This Agreement shall be binding upon the parties hereto, their heirs, successors, administrators, assigns and purchasers of all or part of the interest of the Employer herein. It shall likewise remain binding upon the Employer, his heirs, successors, administrators and assigns in the event that it moves, transfers, sells or combines with any other laundry.

43.  **SEPARABILITY:**

If any provision or part thereof of this Agreement is in conflict with any applicable Federal or State Law or regulation, such provision shall be deemed to be deleted from this Agreement or shall be deemed to be in effect only to the extent permitted by such law or regulation. In the event that any provision of this Agreement is thus rendered inoperative, the remaining provisions shall nevertheless remain in full force and effect.

44.  **UNION CONVENTIONS:**

A.  Leaves of absence shall be granted, upon request, to not more than two employees in any one plant (except not more than one employee in any plant with 30 or less employees) for the purpose of attending a National Union Convention for no longer than five calendar days.
Not more than one such convention shall be eligible during the life of this Agreement for this benefit.

B.  Four weeks advance notice shall be given to the Employer with respect to any such requested leave of absence.

C.  Employees granted such leaves of absence, shall be paid their normal rate of pay while on such leave for days that they would have otherwise worked, and in the event that a piece rate is used to calculate the earnings of the employee, that employee's rate of pay shall be the average daily rate of pay earned by the employee during the preceding two weeks, and notwithstanding any other provision of this Collective Bargaining Agreement, employees granted such leaves shall be deemed to be employed and at work for all purposes of benefit, vacation, sick leave, seniority and any and all other entitlement calculations and accumula-

tions.

45.  **RESPECT AND DIGNITY**

The Employer and the Union agree that each employee and representative of the Employer should be treated with respect and dignity. Verbal abuse, threats, or harassment by managers or supervisors will not be tolerated. Discipline of employees shall not be administered in front of other bargaining unit employees, except in those cases (i) where the employee requests a witness or Union representative or (ii) where necessary to protect the immediate personal safety or property of employees or the Employer. Discipline shall be administered in a professional manner.
All acts of disrespect shall be subject to the grievance and arbitration procedure.

46.  **UNIFORMS**

The Employer shall offer a uniform program at each location. Its implementation shall be decided by mutual agreement. The uniforms shall bear a UNITE! emblem and be manufactured and laundered in shops represented by UNITE! It shall be the obligation of all employees to wear uniforms provided hereunder.

47.  **PRINTING/TRANSLATION OF AGREEMENT**

The Employers and the Union shall bear fifty (50) percent of the cost of the printing and translation of this Agreement in English and Spanish.

The Union shall endeavor to require additional signing employers to contribute to the Employer's said fifty (50) percent share.

48.  **RECOGNITION OF OTHER UNITS**

The Employer will recognize the Union as the exclusive legal collective bargaining agent for any unorganized bargaining unit of the Employer in which the Union obtains and demonstrates that it has authorization cards from a majority of the employees in that unit designating it as the exclusive collective bargaining agent. Upon notice from the Union, the Employer shall agree to a card check by a neutral third party mutually agreeable to the Employer and the Union. The Employer, its supervisors and other agents shall remain neutral during any such organizing campaign.

Within ten (10) days of opening or acquiring a new facility, the Employer shall provide to the Union notice and names, addresses, job classifications and, where available, telephone numbers of all employees in the unorganized units.

## 49.    ETHNIC AND CULTURAL DIVERSITY

The parties recognize that many recent immigrant workers are employed by the Employer, and are a vital element to the success of the facility.  While English is the primary language of the workplace, the parties respect the right of all employees to use the language of their choice in the workplace, and the Employer recognizes its obligation to provide all notices, announcements, training material etc., in the appropriate language(s) represented by a material number of employees in the Employer's workforce.

The Employer agrees to cooperate with the Union in the development of an English as a second language program.  The program will incorporate material that will help employees to meet citizenship test requirements as well as material to help them with work-related terms and conditions . The program will be conducted at a mutually agreeable location.

In the event that an employee expresses that he or she is experiencing difficulty understanding English in a situation involving a dispute on the shop floor, a possible grievance, possible confusion about work duties and responsibilities, or necessary clarification of questions arising out of this Agreement, he may request the assistance of a translator of his choice, as long as such translator is on the premises.

## 50    PROTECTION OF IMMIGRANT WORKERS

A.    Discharge or Suspension of Employees based on information regarding their immigration status and / or citizenship status.

1.    In the event the Employer is legally required to suspend or discharge an employee with one (1) year of service, on account of information and/or documentation obtained concerning his/her immigration or citizenship status, the Employer shall provide any such suspended or discharged employee with one (1) year period in which he may be reinstated to employment upon the presentation of documentation and/or information establishing his right to be employed by the Employer, provided such position has not been eliminated or is on layoff; and provided that this paragraph shall be subject to the applicable seniority, layoff or recall from layoff provisions of this agreement.

2.    Upon his reinstatement, any such employee shall be granted the seniority held by the employee on the date of her/his suspension and/or discharge.

B.    In the event that the Employer is served with a validly executed Search or Arrest warrant, the Employer shall take the following action: To the extent legally possible, arrange for a questioning of employees to occur in as private a setting as possible in the workplace.

C.    The Employer shall grant employees excused absences where given one week's prior notice to attend any appointments scheduled by the INS or U.S. Department of State with respect to immigration or citizenship status of the employee, spouse, child or parent. The Employer may require proof of the appointment and proof of the family relationship.

D.

1.    The Employer shall not request information or documents from workers or applicants for employment as to their immigration status except as required by law.

2.    The Employer shall not disclose confidential information concerning workers to any person or government agency except as required by law or in response to the lawful directive of such agency.  Confidential information includes names, addresses, and social security numbers.

3.    Should an INS agent demand entry into the Employer's premises or the opportunity to interrogate, search or seize the person or property of any Employee, then the Employer shall insist that a search warrant be produced and shall as soon as is reasonably practical,  notify the Union by telephone to the Union's office.

## 51    PHYSICAL PLANT

In any plant first acquired by the Employer after July 1, 2001:

A.    Lunch Room: The Employer shall provide a clean, sanitary lunch area with sufficient room for all employees or operate under a split lunch system so that all employees eating during a single lunch period have an individual lunch space.  The lunch area shall be used for breaks, meals, meetings and conferences only.

B.    The Employer shall provide each employee with a locker or other clean, secure space for the employee to use for personal effects.

52.    **OTHER AGREEMENTS:**

In the event the Union enters into a settlement of its present negotiations for a modification and extension of the collective bargaining agreement covering the period November 28, 2000 through November 27, 2003, with any other employer engaged in Institutional, Retail/Healthcare work and/or Industrial, Hospitality, i.e., Hotel, Restaurant or any Linen Supply, it shall notify "the Employer" of the contents of such settlement and shall have the option. exercisable within five (5) business days thereafter, of substituting such settlement in place of the terms and conditions contained herein.

53.    **TERMINATION:**

This Collective Bargaining Agreement shall be effective November 28, 2003 and shall continue in full force and effect through November 27, 2006, and shall be automatically renewed from year to year thereafter, unless sixty (60) days prior to the expiration date of this Collective Bargaining Agreement or any renewal thereof, notice in writing by Certified Mail is given by either party to the other of its desire to propose changes in this Agreement or of its intention to terminate the same, in either of which events, this Agreement shall terminate on the expiration date next following said notice.

_____

    **(Name of Firm)**

By: _____

    **(Name and Title)**

**Laundry, Dry Cleaning and Allied Workers Joint Board,**
**UNITE, AFL-CIO, CLC.**

By: _____

    **Wilfredo N. Larancuent, Mgr.**

agreemnt.txt:cntr

## EXHIBIT A

SUPPLEMENTAL AGREEMENT dated as of November 28, 2003, between (hereinafter referred to as the "Employer") and the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE, AFL-CIO, CLC., (hereinafter referred to as the "Union").

### W I T N E S S E T H :

WHEREAS, the Employer and the Union have executed a Collective Bargaining Agreement dated as of November 28, 2003 (herein called the "Collective Bargaining Agreement"), which is now in full force and effect; and

WHEREAS, as part of the consideration for the execution or renewal of the Collective Bargaining Agreement by the Union, the Employer agreed to contribute sums of money equal to a stated percentage of its payroll to a fund or funds to be used to provide retirement benefits, life, accident and health insurance, medical care, hospitalization and other insurance benefits to eligible employees employed by contributing Employers in "Industries," including the Laundry Industry, under the jurisdiction of the Union; to provide an educational assistance program for eligible employees and eligible children of said employees; provide hospitalization and/or medical care for the families of such employees and to provide benefits upon their retirement to eligible employees of the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE, AFL-CIO, CLC and the Laundry, Dry-Cleaning Workers & Allied Industries Health Fund for whom contributions are made to the Laundry & Dry Cleaning Workers Insurance Fund, all of whom are part of the group embraced within the general plan in the said Industries, including the Laundry Industry, and medical care and hospitalization insurance to such eligible employees who have retired and their spouses; and to execute a Supplemental Agreement in the form of this Agreement providing for such contributions and the application thereof; and

WHEREAS, the Employer has heretofore entered into one or more prior Supplemental Agreements with the Union for the purpose of providing funds for certain of the above described benefits, and

WHEREAS, it is the intention that the within Supplemental Agreement shall supersede all prior Supplemental Agreements above referred to from and after November 28, 1996;

NOW, THEREFORE, in consideration of the premises, the Union and the Employer agree that the Collective Bargaining Agreement shall be supplemented by adding thereto the following provisions:

1. The term "employees of the Employer" as used in the Supplemental Agreement means all of the employees of the Employer within the collective bargaining unit fixed by the Collective Bargaining Agreement, including employees during their trial

period.

2. This Supplemental Agreement shall supersede all prior Supplemental Agreements herein above referred to, from and after November 28, 2000 provided, however, that all sums of money paid or payable by the Employer under any prior Supplemental Agreement to the Trustees designated in the Agreement and Declaration of Trust which accompanied, and was made part of, said prior Supplemental Agreement (insofar as any part of such sums of money so paid by the Employer to said Trustees have not been expended or applied by said prior Supplemental Agreements and Agreement and Declaration of Trust) shall be applied by the said Trustees to the purposes set forth and provided for in said prior Supplemental Agreements and Agreement and Declaration of Trust, and subject to the provisions therein contained.

3. The Employer shall pay to the Trustees (hereinafter called the "Trustees") designated under the Agreement and Declaration of Trust as most recently amended (a copy of which Agreement and Declaration of Trust as thus amended has been made available to the Employer and approved by the Employer), the terms and provisions of which Agreement and Declaration of Trust are herein specifically incorporated by reference, sums of money determined as follows:

Effective November 28, 2003, the Employer shall pay to the Trustees of the Laundry, Dry-Cleaning Workers and Allied Industries Health Fund, 11% of the total gross earnings, prior to payroll deductions, payable by the Employer to the employees of the Employer for the preceding pay period. Effective November 28, 2004, the Employer shall pay to the Trustees of the Laundry, Dry-Cleaning Workers & Allied Industries Health Fund 11.5% of the total gross earnings, prior to payroll deductions, payable by the Employer to the employees of the Employer for the preceding pay period. Effective November 28, 2005, the Employer shall pay to the Trustees of the Laundry & Dry Cleaning Workers Insurance Fund 12% of the total gross earnings, prior to payroll deductions, payable by the Employer to the employees of the Employer for the preceding pay period.

All of the foregoing sums shall be administered and expended by the Trustees pursuant to the provisions of the aforesaid Agreement and Declaration of Trust for the purpose of providing benefits upon retirement because of old age, life, accident and health insurance, and such other medical care and hospitalization and other insurance benefits, as the Trustees may reasonably determine, to eligible employees employed by the Employer, eligible employees employed by other contributing Employers in the Industries including the Laundry Industry, under the jurisdiction of the Union, to provide educational assistance for eligible employees and eligible children of said employees; to provide benefits upon their retirement to eligible employees of the Laundry, Dry cleaning and Allied Workers Joint Board, UNITE, AFL-CIO,CLC., and the Laundry, Dry-Cleaning Workers and Allied Industries Health Fund for whom contributions are made to the Laundry & Dry Cleaning Workers Insurance Fund all of whom are part of the

group embraced within the general plan in the said Industries, including the Laundry Industry, and also to provide medical care and/or hospitalization insurance to such eligible employees who have retired and their spouses.

4.   The Arbitrator also shall have the authority, in such cases as he shall deem proper, to order the Employer to pay all insurance and related claims to the extent of the Schedule of Benefits established from time to time by the Trustees which arise during any period of suspension or cancellation of the insurance coverage caused by non-payment by the Employer of the required contribution to the Fund and which claims remain unpaid because of such non-payment. No suspension or cancellation shall become effective unless ten (10) days prior written notice shall be given the Employer.

5.   The Employer shall furnish to the Trustees, upon request, such information and the Trustees may request reports in the performance of their duties under the Agreement and Declaration of Trust. The Trustees, or any authorized agent or representative of the Trustees shall have the right at all reasonable times during business hours to enter upon the premises of the Employer and to examine and copy such of the books, records, papers and reports of the Employer as may be necessary to permit the Trustees to determine whether the Employer is fully complying with the provisions of paragraph 3.

6.   No employee or member of the family shall have the option to receive instead of the benefits provided for by any of the Agreement and Declaration of Trust any part of the contribution of the Employer. No employee shall have the right to assign any benefits to which he may be or become entitled under the Agreement and Declaration of Trust or to receive a cash consideration in lieu of such benefits either upon termination of the Trust therein created, or through severance of employment or otherwise.

7.   A.   This Supplemental Agreement and the Collective Bargaining Agreement and Declaration of Trust as amended shall be construed as a single document, and all of the provisions for the administration and enforcement thereof (including provisions for the arbitration) shall apply to the administration and enforcement of this Supplemental Agreement.

B.   In the event that the Union receives written notice from one or more of the Trustees, designated by the Trustees for that purpose, that the Employer has failed to pay in full any sum due the Trustees under paragraph 3 and that such failure has continued for five (5) days, the Union may direct its members to discontinue work in the plant of the Employer and to discontinue work upon laundry being processed for the Employer by processors until all sums due from the Employer under paragraph 3 above have been paid in full.

The remedy provided for in this sub-paragraph shall be in addition to all other remedies available to the Union and the Trustees and may be exercised by the Union, anything in the Collective Bargaining Agreement to the contrary notwithstanding. Payment by the Employer under protest shall be without prejudice to its right to contest the correctness of the Trustee's demand by arbitration.

C.   The Trustees, in their own names as Trustees, may institute or intervene in any proceeding at law, in equity, in bankruptcy or arbitration proceedings for the purpose of effectuating the collection of any sums due to them from the Employer under the provisions of paragraph 3.

8.   The provisions of this Supplemental Agreement shall remain in full force and effect for the full term of the Collective Bargaining Agreement and of any extensions or renewals there of but shall terminate and come to an end with the Collective Bargaining Agreement or any extension or renewal thereof, or prior thereto by an instrument in writing executed by the majority of the members of the Advisory Committee provided for in the Agreement and Declaration of Trust and by the Union.

9.   The primary purpose of this Supplemental Agreement and the Agreement and Declaration of Trust as amended being to provide a practical plan of benefit for employees of contributing Employers upon their retirement because of old age, and life, accident and health insurance, medical care, hospitalization and other insurance benefits to said employees and their families, and to provide an educational assistance program for eligible employees and children of said employees; it is understood that the form of the Plan, and of this Supplemental Agreement and of the aforesaid Agreement and Declaration of Trust, shall not give rise to a literal or formal interpretation or construction; such interpretation or construction shall be placed on this Supplemental Agreement, and the said Agreement and Declaration of Trust, as will assist in the functioning of the Plan for the benefit of employees and their families regardless of form.

10.   In no event will the Employer be entitled to the return of any part of any contribution made hereunder.

11.   Regardless of the date on which the within Supplemental Agreement shall be executed, the within Supplemental Agreement shall be effective as of November 28, 1996, with the same force and effect as if it had been actually executed on that date.

12.   Neither the execution of this Agreement nor any provision herein contained, or contained in any other Agreement effecting the same, shall be deemed to release the Employer from any condition or contributions provided for in any prior Agreement or Agreements, and which have become due and payable to the Trustees referred to in any such prior Agreement or Agreements prior to November 28, 2003 and not yet paid to such Trustees.

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Agreement to be executed by their duly authorized representatives effective upon the day and year first above written.

**Laundry, Dry Cleaning and Allied Workers Joint Board
UNITE, AFL-CIO, CLC**

By: _____
　　　Wilfredo N. Larancuent, Manager

**Name of Shop:**


By: _____
　　　(Employer Signature and Title)

---

## EXHIBIT B

SUPPLEMENTAL AGREEMENT dated as of November 28, 1996 between (hereinafter referred to as the "Employer") and the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE, AFL-CIO, CLC, (hereinafter referred to as the "Union".)

### WITNESSETH

WHEREAS, the Employer and the Union have executed a Collective Bargaining Agreement dated as of November 28, 2003, (hereinafter called the "Collective Bargaining Agreement"), which is now in full force and effect; and

WHEREAS, as part of the consideration for the execution or renewal of the Collective Bargaining Agreement by the Union, the Employer agreed to contribute sums of money equal to daily per capita contribution to a fund to be used to provide retirement benefits to eligible employees employed by contributing Employers in "Industries," including the Laundry Industry, under the jurisdiction of the Union and to eligible surviving spouses of said employees and to execute a Supplemental Agreement in the form of this Agreement providing for such contributions, and the application thereof.

NOW, THEREFORE, in consideration of the premises, the Union and the Employer agree that the Collective Bargaining Agreement shall be supplemented by adding thereto the following provisions:

1.　　　The term "employees of the Employer" as used in this Supplemental Agreement means all route sales employees, route employees, route sales employees' helpers, engineers and maintenance employees, including said employees, during their trial period.

2.　　　The Employer shall pay to the Trustees (hereinafter called the "Trustees") designated under the Agreement and Declaration of Trust made available (a copy of which Agreement and Declaration of Trust as amended has been exhibited to the Employer and approved by the Employer), the terms and provisions of which Agreement and Declaration of Trust are herein specifically incorporated by reference, sums of money determined as follows:

Effective November 28, 2003, the Employer shall pay to the Trustees of the Laundry,Dry-Cleaning Workers & Allied Industries Retirement Fund $1.60 for each employee participant of the aforementioned Fund for each compensable day, payable on the pay day for the week beginning November 28, 2003 and weekly thereafter. Effective November 28, 2003 the Employer shall pay to the Trustees of the Laundry,Dry-Cleaning Workers & Allied Industries Retirement Fund .8% of the total gross earnings, prior to payroll deductions, payable by the Employer to the employees of the Employer

for the preceding pay period. Effective November 28, 2003, the Employer shall pay to the Trustees of the Laundry & Dry-Cleaning Workers & Allied Industries Health Fund, two tenths of one percent (.2%) of the total gross earnings prior to payroll deductions, payable by the Employer to the employees of the Employer for the preceding pay period for the Legal and Education Fund.

All of the forgoing sums shall be administered and expended by the Trustees pursuant to the provisions of the aforesaid Agreement and Declaration of Trust for the purpose of providing benefits upon their retirement because of old age, as the Trustees may reasonably determine, to eligible employees employed by the Employer and the surviving spouses of said employees, eligible employees employed by other contributing employers in the Industries, including the Laundry Industry, under the jurisdiction of the Union and the surviving spouses of said employees.

3.    The Employer shall furnish to the Trustees, upon request, such information and reports as they may require in the performance of their duties under the Agreement and Declaration of Trust. The Trustees, or any authorized agent or representative of the Trustees shall have the right at all reasonable times during business hours to enter upon the premises of the Employer and to examine and copy such of the books, records, papers and reports of the Employer as may be necessary to permit the Trustees to determine whether the Employer is fully complying with the provisions of paragraph 2.

4.    No employee or member of his family shall have the option to receive instead a of the benefits provided for by the Agreement and for by the Agreement and Declaration of Trust, any part of the contributions of the Employer. No employee shall have the right to assign any benefits to which the employee may be or become entitled under the Agreement and Declaration of Trust or to receive a cash consideration in lieu of such benefits either upon termination of the Trust therein created, or through severance of employment or otherwise.

5.    A.    This Supplemental Agreement and the Collective Bargaining Agreement and the Agreement and Declaration of Trust as amended shall be construed as a single document, and all of the provisions of the Collective Bargaining Agreement relating to the administration and enforcement thereof (including provisions for arbitration) shall apply to the administration and enforcement of this Supplemental Agreement.

B.    In the event that the Union receives written notice from one or more of the Trustees, designated by the Trustees for that purpose, that the Employer has failed to pay in full any sum due the Trustees under paragraph 2 and that such failure has continued for five (5) days, the Union may direct its members to discontinue work in the plant of the Employer and to discontinue work upon laundry being processed for the Employer by processors until all sums due from the Employer under paragraph 2 above have

been paid in full.

The remedy provided for in this sub-paragraph shall be in addition to all other remedies available to the Union and the Trustees and may be exercised by the Union, anything in the Collective Bargaining Agreement to the contrary notwithstanding. Payment by the Employer under protest shall be without prejudice to its right to contest the correctness of the Trustees' demand, by arbitration.

C.    The Trustees, in their own names as Trustees, may institute or intervene in any proceedings at law, in equity, in bankruptcy or arbitration proceedings for the purpose of effectuating the collection of any sums due to them from the Employer under the provisions of paragraph 2.

6.    The provisions of this Supplemental Agreement shall remain in full force and effect for the full term of the Collective Bargaining Agreement and of any extensions or renewals thereof but shall terminate and come to an end with the Collective Bargaining Agreement or any extension or renewal thereof, or prior thereto by an instrument in writing executed by a majority of the Trustees provided for in the Agreement and Declaration of Trust and by the Union.

7.    The primary purpose of this Supplemental Agreement and the Agreement and Declaration of Trust as amended being to provide a practical plan of benefits for employees of contributing Employers upon their retirement because of old age and to the surviving spouses of said employees, it is understood that the form of the Plan, and of this Supplemental Agreement and of the aforesaid Agreement and Declaration of Trust, shall not give rise to a literal or formal interpretation or construction; such interpretation or construction shall be placed on this Supplemental Agreement, and the said Agreement and Declaration of Trust, as will assist in the functioning of the Plan for the benefit of employees and their families regardless of form.

8.    In no event will the Employer be entitled to the return of any part of any contribution made hereunder.

9.    Regardless of the date on which the within Supplemental Agreement shall be executed, the within Supplemental Agreement shall be effective as of November 28, 2003, with the same force and effect as if it had been actually executed on that date.

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Agreement to be executed by their duly authorized representatives effective upon the day and year first above written.

**Laundry, Dry-Cleaning & Allied**
**Workers Joint Board, UNITE**     _____
**HERE, AFL-CIO, CLC.**         **Name Of Shop**

By: _____    By: _____
    Wilfredo N. Larancuent        (Employer Signature & Title)

12122421387    Line 1    LDCW HEALTH FUND, UNITEHERE!    10:18:37 a.m.    03-22-2007    5 /6

## COLLECTIVE BARGAINING AGREEMENT

THIS COLLECTIVE BARGAINING AGREEMENT dated as of October ____, 2006 is entered into by and between **Old Masters Cleaners, Inc** (hereinafter referred to as the "Employer"), and the Laundry, Dry-Cleaning & Allied Workers Joint Board , UNITE HERE (hereinafter referred to as the "Union").

WHEREAS, the Employer and the Union are parties to a Collective Bargaining Agreement effective November 28, 2003 and expiring on November 27, 2006 and the parties have requested modification of certain of the provisions of that Agreement ; and

WHEREAS, the standards in the New York laundry industry have been traditionally established through the agreement between the Union and the Laundry Industry Multi-Employer Bargaining Group (Multi-Employer Bargaining Group),

WHEREAS, the Union and various employers are engaged in negotiations for a successor agreement to their current 2003-2006 collective bargaining agreement and have not yet reached final agreement on a successor agreement; and

WHEREAS, the parties seek to apply the industry standards, including wages, employee benefits and other terms, to their agreement, and

WHEREAS, the parties seek to avoid disruption of labor peace such as a strike;

NOW, THEREFORE, in consideration of the mutual covenants, promises and agreements contained herein, the parties hereto agree as follows:

1. Effective November 28, 2006, the terms of the 2003-2006 collective bargaining agreement shall continue in full force and effect except as specifically modified by the parties.

2. The Employer and the Union shall be bound by a successor collective bargaining agreement which incorporates the terms of the Pattern Collective Bargaining Agreement reached by the Union. The Union in its sole discretion may designate any agreement reached with an employer in the New York laundry market as the Pattern Collective Bargaining Agreement..

3. The parties shall enter into a written Collective Bargaining Agreement embodying all of the agreements, modifications and changes agreed to by the parties.

4. Any disputes arising out of or in connection with this Agreement shall be resolved through the Grievance and Arbitration Procedures (Articles 34 and 35) contained in the parties' 2003-2006 Collective Bargaining Agreement.

5. This agreement shall expire November 28, 2009 or upon the effective date of a final successor collective bargaining agreement, whichever occurs earlier.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

LAUNDRY, DRY-CLEANING & ALLIED
WORKERS JOINT BOARD, UNITE HERE

By:_____

Title:_____
:BG/mcB

Old Masters Cleaners, Inc.

By:_____

Title: Pres_____

**EXHIBIT B**

**LAUNDRY, DRY CLEANING WORKERS AND ALLIED INDUSTRIES HEALTH FUND, UNITE HERE!**
**LAUNDRY, DRY CLEANING WORKERS AND ALLIED INDUSTRIES RETIREMENT FUND, UNITE HERE!**

**Name of Firm:** OLD MASTERS        **A/C #:** 001L.0056

| Quarter | P/R | | | | | |
|---------|-----|--|--|--|--|--|
| 4Q06 | $11,700.00 | | | | | |
| 3Q06 | $11,700.00 | | | | | |
| 2Q06 | $11,700.00 | | | | | |
| 1Q06 | $11,700.00 | | | | | |
| | $46,800.00 | ÷ | 52 | = | $900.00 | **Average Weekly Payroll** |
| | | | | X | 14.40% | **Current Rate** |
| | | | | = | $129.60 | **Average Weekly Payment** |
| | | | | X | 4 | **# of Delinquent Weeks** |
| | | | | | | **From: 08/25/07 to 09/28/07** |
| | | | | = | $518.40 | **Estimated Total Weekly Delinquency** |

| | | | | | | | | |
|--|--|--|--|--|--|--|--|--|
| **Interest:** | 10 | X | 0.0034 | = | 0.03 | X | $129.60 | = | $4.41 |
| **Liquidated Damages:** | | | 20% | X | $518.40 | = | | $103.68 |
| **Arbitrator's Cost:** | | | | | | | | $132.00 |
| **Total Liability:** | | | | | | | | **$758.49** |

**EXHIBIT C**

<table>
<tr><td>

In the Matter of
ARBITRATION OF DISPUTES

between

LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES HEALTH FUND, UNITE HERE! and
LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES RETIREMENT FUND, UNITE HERE!
Petitioners,

and

OLD MASTERS CLEANERS, INC.,
Respondent.

</td><td>

**NOTICE OF INTENTION
TO ARBITRATE**

</td></tr>
</table>

Sir(s):

    **PLEASE TAKE NOTICE** that pursuant to the Collective Bargaining Agreement and the Supplemental Agreement thereto (hereinafter, the "Agreement") entered into between Old Masters Cleaners, Inc. (hereinafter, the "Respondent"), and the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE HERE!, and upon notice by the Laundry, Dry Cleaning Workers and Allied Industries Health Fund, UNITE HERE! and Laundry, Dry Cleaning Workers and Allied Industries Retirement Fund, UNITE HERE! (hereinafter, the "Petitioners"), an arbitration will be held before Dr. Philip Ross of 525 West End Avenue, New York, New York 10024 (hereinafter, the "Arbitrator"), designated pursuant to the Agreement, on September 28, 2007, at 11:30 A.M., at the offices of the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE HERE!, located at 275 Seventh Avenue, 7th Floor, New York, New York 10001, seeking an award against you for:

1.    Contributions owed to Petitioners for the period of 08/25/07 through the date of hearing in an estimated amount of $518.40; and

2.    All other contributions due and owing to the petitioners as of the date of hearing;

together with INTEREST, LIQUIDATED DAMAGES, ARBITRATOR'S FEES AND

EXPENSES, ATTORNEYS' FEES and the cost of the AUDIT, if awarded.

**PLEASE TAKE FURTHER NOTICE** that unless you apply to stay this arbitration

within twenty (20) days after the service of this notice upon you, you shall be precluded from

objecting that a valid agreement was not made or has not been complied with and from

asserting in court the bar of a limitation of time.

Dated: September 6, 2007
      New York, New York

                     LAUNDRY, DRY CLEANING WORKERS AND
           ALLIED INDUSTRIES HEALTH FUND, UNITE HERE! and
                     LAUNDRY, DRY CLEANING WORKERS AND
          ALLIED INDUSTRIES RETIREMENT FUND, UNITE HERE!

By:      _Mark Schwartz_
           Mark Schwartz, Esq., MS–0148
           Attorney for Petitioners
           730 Broadway, Tenth Floor
           New York, New York 10003-9511
           (212) 539-5275

Account No.001L.0056
By Regular Mail

Please address all inquires to
Evelyn Soto, at (212) 539-5397

**EXHIBIT D**

<table>
<tr><td>

In the Matter of
ARBITRATION OF DISPUTES

between

LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES HEALTH FUND, UNITE HERE!
LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES RETIREMENT FUND, UNITE HERE!
Petitioners,

and

OLD MASTERS CLEANERS, INC.,
Respondent.

</td></tr>
</table>

**SUBPOENA
DUCES TECUM**

To:    Old Masters Cleaners, Inc.
266 W. 72nd Street
New York, NY 10023

GREETING:

**WHEREAS**, a proceeding has been commenced before the Honorable Philip Ross, Impartial Chairman, between the Laundry, Dry Cleaning Workers and Allied Industries Health Fund, UNITE HERE! and Laundry, Dry Cleaning Workers and Allied Industries Retirement Fund, UNITE HERE! (hereinafter, the "Petitioners"), and Old Masters Cleaners, Inc. (hereinafter, the "Respondent"), who are all the parties named in said action,

**NOW, THEREFORE, YOU ARE COMMANDED** to appear and attend before the Honorable Philip Ross, Impartial Chairman, at the offices of the Laundry, Dry Cleaning and Allied Workers Joint Board, UNITE HERE!, located at 275 Seventh Avenue, New York, New York 10001, on the 28th day of September 2007, at 11:30 A.M. in the morning, and at any recessed or adjourned date for the giving of testimony on all matters relevant to the arbitration hearing,

**AND YOU ARE FURTHER COMMANDED** to produce for examination at such time and place all your payroll records including but not limited to social security quarterly reports, weekly payroll journals, state employment insurance records, cash disbursements book production of summary quarterly reports and any other books or records which are required to determine your liability to the Petitioners, for the period of 08/25/07 through the date of hearing.

**WITNESS**, Honorable Philip Ross, Impartial Chairman, at New York, New York on the 6th day of September 2007.

LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES HEALTH FUND, UNITE HERE! and
LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES RETIREMENT FUND, UNITE HERE!

By: _____

Mark Schwartz, Esq., MS–0148
Attorney for Petitioners
730 Broadway, Tenth Floor
New York, New York 10003-9511
(212) 539-5275

Account No. 001L.0056

By Regular Mail

**EXHIBIT E**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of
ARBITRATION OF DISPUTES

between

LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES HEALTH FUND, UNITE HERE! and
LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES RETIREMENT FUND, UNITE HERE!,
                                          Petitioners,

and

OLD MASTERS CLEANERS, INC.,
                                          Respondent.

**AFFIDAVIT OF SERVICE
08 CIV. 0360 (PKC)**

STATE OF NEW YORK     )
                      ) ss.
County of New York    )

Sabrina Brooks, being duly sworn, deposes and says:

  1.     I am over 18 years of age, am not a party to this action and reside in the Borough of Queens, New York 11421.

  2.     On February 6, 2008, I served the Respondent herein with a copy of the Petition to Confirm Arbitration Award, Notice of Petition and Memorandum of Law in Support of Petition to Confirm Arbitration Award by causing a true copy of said Motion papers addressed to the Respondent at 266 W. 72nd Street, New York, New York 10023 to be delivered to the United States Postal Service at a Post Office within the State of New York for certified mailing, return receipt number 7006 2150 0000 7942 6054 and regular mail.

_Sabrina Brooks_
Sabrina Brooks

Sworn to, before me, this 6th day of February 2008.

_Michele Reid_

**MICHELE REID
Notary Public, State of New York
No. 01RE6159608
Qualified in Kings County
Commission Expires 01|22|2011**